UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Civil No. 1:24-cv-000331-LM-TSM

```
                          )
FRANK STAPLES and         )
KATHLEEN BUSSIERE,        )
    Plaintiffs,           )                    )
                          )
    v.                    )              )
GOVERNOR KELLY AYOTTE, in her      )
official capacity; CHRISTOPHER T. SUNUNU,)
in his individual capacity; STATE OF   )
NEW HAMPSHIRE; NEW HAMPSHIRE      )
STATE POLICE; TOWN OF NEWFIELDS;   )
NEWFIELDS POLICE DEPARTMENT;      )
CHARLES O'LEARY; JOHN FORMELLA;    )
GREGORY DELUCA; MEGAN WALSH;      )
ESTATE OF KATHLEEN O'BRIEN; and    )
JOHN DOES 1–100,          )
    Defendants.           )
_____)
```

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### I. Introduction

1. Plaintiffs Frank Staples and Kathleen Bussiere, proceeding pro se, respectfully submit this First Amended Complaint pursuant to 42 U.S.C. §§ 1983 and 1985(3), as well as the Constitution and laws of the United States and the State of New Hampshire. This action challenges a coordinated campaign of unconstitutional arrests, retaliatory enforcement, surveillance, defamation, malicious prosecution, and exclusion from civic participation directed at Plaintiffs due to their peaceful political speech and association with lawful public dissent.

2. Defendants' actions—led by former Governor Christopher Sununu and implemented by agents of the State of New Hampshire and the Town of Newfields—violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. The same conduct also violated Plaintiffs' rights under Articles 2, 2-b, 8, 10, 14, 15, 19, 22, 32, and 33 of the New Hampshire Constitution, and constitutes actionable torts under New Hampshire common law, including false arrest, malicious prosecution, abuse of process, defamation, and intentional infliction of emotional distress.

3. Plaintiffs seek:

  a. Declaratory and injunctive relief against Governor Kelly Ayotte in her official capacity;

  b. Compensatory and punitive damages against former Governor Sununu and other individual defendants acting in their personal capacities;

  c. All relief authorized under 42 U.S.C. § 1988 and 28 U.S.C. §§ 2201–2202.

4. Jurisdiction is proper under 28 U.S.C. § 1331 and § 1343(a)(3) for claims arising under federal law. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over state-law and state-constitutional claims, as they arise from the same events and facts as Plaintiffs' federal claims.

4A. None of the claims presented herein are barred by the doctrines of Younger abstention, Heck v. Humphrey, or the Rooker-Feldman doctrine. Plaintiffs' prior criminal cases were dismissed, resolved by acquittal, or otherwise terminated in their favor, and there are no pending state proceedings that overlap with the relief sought. Accordingly, this Court retains full jurisdiction over all claims asserted.

5. This Complaint incorporates by reference relevant facts and legal issues raised in:

  a. Todd v. Sununu, Case No. 1:24-cv-00330 (D.N.H.), and

  b. Domenico v. Town of Newfields, Docket No. 226-2022-CV-00442 (N.H. Hillsborough Cty. Sup. Ct., Southern District),

which involve overlapping events and violations involving several of the same Defendants.

6. Plaintiffs demand a trial by jury on all issues so triable and request all appropriate legal and equitable relief, including expungement of records, policy reform, and such other relief as the Court deems just and proper.[1]

([1] Plaintiffs file this First Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, following the Court's grant of additional time to amend in response to Defendants' Motions to Dismiss. This amendment is submitted with the benefit of a stipulated extension approved by the Court. Plaintiffs respectfully assert that leave should be freely granted "when justice so requires" under Rule 15(a)(2), and this pleading is timely filed under that standard. See Fed. R. Civ. P. 15(a)(2).)

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1985(3). This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), as the action seeks redress for the deprivation of civil rights under color of state law.

8. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' claims arising under the Constitution and laws of the State of New Hampshire, including state constitutional and common law tort claims. These claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Declaratory and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because one or more Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred within the District of New Hampshire.

10A. Plaintiffs note that Defendants have argued in their motions to dismiss that venue and jurisdiction are improper or that their actions were protected by immunity doctrines. However, Plaintiffs' claims arise directly under federal constitutional provisions, including the First and Fourth Amendments, and involve state actors acting under color of law. Plaintiffs have sufficiently pled all jurisdictional predicates, and the facts alleged—many supported by public records and court transcripts—fall squarely within this Court's adjudicative authority. Plaintiffs further assert that resolution of immunity defenses, particularly as they relate to disputed motives or intent, is premature prior to discovery.

## III. Defendants

11. Plaintiff FRANK STAPLES is a resident of Manchester, New Hampshire. He is a civic journalist, political organizer, and co-founder of the civic media platform Absolute Defiance. He brings this action pro se.

12. Plaintiff KATHLEEN BUSSIERE is a resident of Newton, New Hampshire. She is a New Hampshire citizen who was unlawfully arrested and injured while attending a public meeting. She brings this action pro se.

13. Defendant GOVERNOR KELLY AYOTTE is the current Governor of the State of New Hampshire. She is sued solely in her official capacity for purposes of declaratory and injunctive relief under Ex parte Young doctrine and related equitable authority.

14. Defendant CHRISTOPHER T. SUNUNU is the former Governor of the State of New Hampshire. He is sued in his individual capacity for actions taken under color of state law that resulted in constitutional violations, including unlawful arrests, conspiracy, retaliation, and misuse of government authority.

15. Defendant JOHN FORMELLA is the Attorney General of the State of New Hampshire. He is sued in his individual capacity for authorizing, ratifying, or failing to prevent constitutional and legal violations committed by subordinates within his supervisory authority, including misuse of prosecutorial process and prejudicial public statements.

16. Defendant CHARLES O'LEARY is a prosecutor employed by the New Hampshire Department of Justice. He is sued in his individual capacity for his role in initiating malicious prosecutions, seeking retaliatory bail revocation, and misusing legal procedures to silence protected speech.

17. Defendant STATE OF NEW HAMPSHIRE is named as a party only to the extent permitted by law for prospective injunctive relief and under the doctrine of Ex parte Young for official capacity enforcement purposes. Claims for monetary damages are not sought against the State due to Eleventh Amendment immunity.

18. Defendant NEW HAMPSHIRE STATE POLICE is a state law enforcement agency under the Department of Safety. It is named for purposes of injunctive and declaratory relief and, to the extent permitted under federal law, for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). Plaintiffs allege that NHSP maintained and implemented a custom, policy, or pattern and practice of retaliatory enforcement and viewpoint-based suppression of constitutionally protected speech.

19. Defendant TOWN OF NEWFIELDS is a municipal government entity responsible for law enforcement and ordinance enforcement in Newfields, New Hampshire. It is named under Monell for damages and prospective relief, based on a custom, policy, or pattern and practice of unlawful surveillance, retaliatory citation and arrest, and targeted enforcement against political dissidents.

20. Defendant NEWFIELDS POLICE DEPARTMENT is the enforcement agency of the Town of Newfields. It directly participated in the surveillance, citation, and arrest of Plaintiffs during constitutionally protected civic activity. Plaintiffs assert municipal liability under Monell, based on a widespread pattern and practice of viewpoint discrimination and retaliatory enforcement, endorsed by senior officials. Plaintiffs further allege that the Newfields Police Department acted pursuant to a municipal policy or widespread custom of suppressing political dissent near

Governor Sununu's residence. The pattern of enforcement described here and in Domenico—including surveillance, pre-positioned officers, and use of an ordinance never applied to other groups—supports Monell liability under 42 U.S.C. § 1983. This practice was so persistent and well-settled as to constitute official policy, even in the absence of a written directive.

21. Defendant MEGAN WALSH is a New Hampshire State Trooper who directly participated in the October 13, 2021 Executive Council arrests. She is sued in her individual capacity for constitutional violations committed under color of state law.

22. Defendant GREGORY DELUCA is a New Hampshire State Trooper who personally arrested Plaintiff Frank Staples on multiple occasions, including October 13 and November 19, 2021. He is sued in his individual capacity for retaliatory arrest, excessive force, and malicious prosecution.

23. Defendant ESTATE OF KATHLEEN O'BRIEN is named for purposes of liability arising from actions taken under color of law by Kathleen O'Brien while employed as a Newfields Police Officer. O'Brien participated in the unlawful surveillance and citation of peaceful demonstrators at the December 28, 2020 vigil. Liability is asserted under applicable state tort and constitutional provisions.

24. Defendants JOHN DOES 1–100 are government agents, law enforcement officers, or officials whose identities are currently unknown. Each acted under color of law and in coordination with the named Defendants to carry out the retaliatory, unlawful, and unconstitutional acts described herein. Plaintiffs reserve the right to amend this complaint as discovery identifies these individuals.

## IV. Factual Allegations

### A. December 28, 2020 – Candlelight Vigil in Newfields

25. On December 28, 2020, Plaintiff Frank Staples, through his civic media platform Absolute Defiance, organized a peaceful candlelight vigil in a public park near Governor Christopher Sununu's residence in Newfields, New Hampshire. The event was held to memorialize lives lost or affected by COVID-19 lockdown measures, including deaths from suicide, overdose, economic hardship, and isolation.

26. The vigil was announced via a public Zoom meeting, which was infiltrated without disclosure by Newfields Police Officer Kathleen O'Brien. O'Brien later used this information to participate in enforcement actions at the vigil.

27. Staples directed attendees not to bring signs, use bullhorns, chant, or behave disruptively. The planned observance involved candlelight, prayer, and symbolic silence. Participants were unable to complete the vigil due to immediate and aggressive police intervention.

28. When participants arrived at the vigil site, they encountered a pre-positioned and heavily armed police presence that included two uniformed officers from the Newfields Police Department (identified in video but not by name, referred to herein as John Doe 1 and John Doe 2), an unidentified plainclothes individual believed to be a masked State Trooper (John Doe 3), and several other New Hampshire State Police officers. These officers issued contradictory instructions—permitting movement but not standing still—and failed to provide any lawful dispersal orders or clear guidance. Plaintiff Frank Staples attempted to comply but was ultimately seized and arrested by John Doe 1 and/or John Doe 2 after asking the masked officer (John Doe 3) to identify himself, which is constitutionally protected conduct. Staples was told only that if he did not "stop," he would be arrested; when he asked, "Stop what, sir?" he was handcuffed and detained. This seizure, arrest, and the resulting imposition of excessively restrictive bail conditions—including a broad prohibition on proximity to Governor Sununu—constituted violations of Staples' clearly established rights under the First and Fourth Amendments to the U.S. Constitution, and Articles 8, 19, and 33 of the New Hampshire Constitution. These actions caused deprivation of liberty, chilling of expressive conduct, and unjustified exclusion from public spaces.

29. Participants attempted to comply by walking quietly through the cul-de-sac. Suddenly, without warning, law enforcement stopped the group and encircled them with riot shields. Several attendees were issued citations for violating a newly adopted anti-picketing ordinance.

30. 30. The ordinance in question was passed just days earlier and appeared designed to restrict peaceful assembly near Governor Sununu's home. It was selectively enforced against Plaintiff Frank Staples and other civic participants, who engaged in symbolic, silent observance. No comparable enforcement was taken against other gatherings near the Governor's residence. This conduct resulted in the issuance of citations against Staples without probable cause and without prior notice or warning. The citations imposed a legal burden, reputational stigma, and chilled further expression. These harms stemmed directly from viewpoint-based enforcement and violated Staples' rights under the First and Fourth Amendments to the U.S. Constitution and Articles 8, 22, and 32 of the New Hampshire Constitution.

30A. These actions mirrored allegations raised in Domenico v. Town of Newfields, where plaintiffs similarly alleged that Newfields officials, acting with deliberate indifference, used a newly crafted ordinance and preemptive policing to chill civic engagement. The ordinance was allegedly passed in coordination with local and state authorities to suppress specific political viewpoints, with law enforcement instructed to selectively enforce it against dissenters. This

broader pattern reinforces Plaintiffs' claims that their arrests and citations were not isolated enforcement decisions but components of an orchestrated policy targeting civic activists for retaliatory treatment.

31. Plaintiffs and other attendees, including journalist Christopher Maidment and William Domenico, were cited without engaging in any unlawful behavior. There were no dispersal orders, warnings, or probable cause assessments.

32. 32. One individual was temporarily detained by Newfields Police after lawfully requesting officer identification and exercising his right to open carry a licensed firearm. Despite his immediate release without charge, Governor Sununu made public statements implying that "armed protesters" had been arrested in his backyard. These knowingly false statements, made without factual basis, were widely disseminated through media channels and caused reputational harm to Plaintiff Frank Staples and other attendees. This state-sponsored misrepresentation violated Plaintiffs' rights under the First and Fourteenth Amendments and Article 8 of the New Hampshire Constitution by stigmatizing civic expression and associating lawful protest with criminality.

33. 33. All citations issued to Plaintiffs and other attendees from the December 28, 2020 vigil were adjudicated not guilty or dismissed. Despite this judicial confirmation of lawful conduct, Plaintiff Frank Staples became the subject of increased surveillance by both the Newfields Police Department and the New Hampshire State Police. This included monitoring of his online civic organizing and preemptive deployment of officers at future events he publicized. The retaliatory nature of these actions violated his clearly established rights to free speech, freedom of association, and freedom from unreasonable searches under the First and Fourth Amendments and Articles 8 and 19 of the New Hampshire Constitution.

34. The conduct of law enforcement on December 28, 2020—including the absence of lawful dispersal orders, the issuance of citations without probable cause, and the selective enforcement of a recently passed ordinance—supports Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985(3). These actions violated Plaintiffs' clearly established rights to freedom of speech and assembly (First Amendment; N.H. Const. Arts. 8, 22, and 32), and to be free from unreasonable seizures and enforcement motivated by viewpoint discrimination (Fourth Amendment; N.H. Const. Arts. 2-b and 15).

34A. Every criminal or civil enforcement action arising from the December 28, 2020 vigil—including citations issued under the anti-picketing ordinance—was ultimately resolved in Plaintiffs' favor. No Plaintiff was found guilty; in all cases, the State either dismissed charges, failed to appear for trial, or lost on the merits. These results reinforce that probable cause was lacking from the outset and that enforcement was driven by retaliatory animus. This outcome supports Plaintiffs' claims for unlawful seizure under the Fourth Amendment and retaliation for protected expression under the First Amendment and Article 22 of the New Hampshire Constitution.

*B. January 31, 2021 – Caroling Arrest in Newfields*

35. On January 31, 2021, Plaintiff Frank Staples participated in a peaceful Christmas caroling event near Governor Sununu's residence in Newfields, New Hampshire, intended as a symbolic act of civil disobedience to challenge the constitutionality of a recently enacted anti-picketing ordinance. The ordinance, passed in close temporal proximity to the prior vigil, was facially content-neutral but selectively enforced. Plaintiff Staples' participation constituted expressive conduct protected by the First Amendment and Article 22 of the New Hampshire Constitution.

36. The gathering was calm, non-disruptive, and intentionally limited in scope. Attendees sang traditional Christmas carols while maintaining peaceful demeanor, without signs, amplification, chanting, or obstruction of traffic or walkways. No member of the group engaged in any conduct that could reasonably be interpreted as disorderly or threatening under state law. The peaceful nature of the event places it firmly within the protections of the First Amendment and Article 32 of the New Hampshire Constitution, guaranteeing the right to peaceably assemble and petition the government.

37. 37. Once again, law enforcement officers from the Newfields Police Department and the New Hampshire State Police were pre-positioned before any conduct occurred, indicating continued surveillance and anticipatory targeting of Plaintiffs' civic activities. The pre-deployment of officers without any lawful basis or real-time complaints further demonstrates a policy of preemptive enforcement aimed specifically at silencing known political dissidents, in violation of the First Amendment and Article 22 of the New Hampshire Constitution. This practice constituted an unlawful prior restraint and retaliatory surveillance lacking any neutral law enforcement purpose.

38. A masked individual—later believed to be a plainclothes State Trooper—was observed speaking with uniformed officers from the Newfields Police Department and the New Hampshire State Police. Officers later claimed that a neighbor had complained about the event, yet no resident was seen approaching, identifying themselves, or directly interacting with police at any time. The absence of any visible complainant or disruption supports the inference that the arrest and citation of Staples were premeditated and not based on any contemporaneous disturbance. This targeted response violated Staples' clearly established rights under the First and Fourth Amendments and Article 32 of the New Hampshire Constitution, which protect peaceful assembly and prohibit arbitrary seizure.

39. Staples and attendee Russan Chester approached the Newfields Police officers to seek clarity regarding the alleged violation. One officer, believed to be a Newfields Police Department Doe Defendant, indicated that citations would be issued to those who remained. Staples returned to the group and relayed the officer's statement. The group unanimously agreed to remain and peacefully continue singing, expressly invoking their right to assemble and express themselves under the First Amendment and Articles 22 and 32 of the New Hampshire Constitution. This decision was based on the understanding that they would engage in lawful

civil disobedience and contest any citations in court. No disorderly conduct, disruption, or safety hazard was created by their continued singing.

40. 40. When the caroling concluded, Staples again approached the Newfields Police officers, including the same Doe Defendant who had spoken earlier, to request that citations be issued to all participants as previously indicated. Instead, Staples was the only individual cited, despite the equal participation of others. This selective enforcement caused a tangible deprivation of Staples' constitutional right to equal protection under the law, as guaranteed by the Fourteenth Amendment, and constituted viewpoint-based discrimination in violation of the First Amendment and Articles 8, 22, and 32 of the New Hampshire Constitution.

41. 41. Staples then calmly requested the masked officer's identification, as required by both RSA 91-A:5 and customary law enforcement transparency policies. The masked individual, believed to be a plainclothes State Trooper, refused to respond. When Staples repeated the request, one of the two uniformed Newfields Police Officers (John Doe 1) warned him to "stop" or be arrested. Staples asked, "Stop what, sir?" and again requested the officer's name. Without further warning or citation, John Doe 1 and another officer (John Doe 2) seized Staples, placed him in handcuffs, and arrested him. This arrest, executed without probable cause or lawful order, deprived Staples of his liberty in violation of the Fourth Amendment and Article 19 of the New Hampshire Constitution, and constituted retaliation for protected expressive conduct under the First Amendment and Articles 8 and 22 of the New Hampshire Constitution.

42. No dispersal order was given. No one else was cited or arrested. The arrest lacked probable cause and followed constitutionally protected expressive conduct.

43. 43. Upon release, Staples was subjected to restrictive and vague bail conditions, including a blanket prohibition on being within 1,000 feet of Governor Sununu or any location he "may be." These conditions were imposed by state prosecutors without a judicial finding of necessity or dangerousness, and lacked clear exceptions for participation in public meetings, peaceful protest, or even digital civic engagement. These terms functioned as a prior restraint on Staples' political speech and assembly rights and caused ongoing chilling effects. They violated his First Amendment rights and Articles 8, 22, and 32 of the New Hampshire Constitution, as well as the protections against excessive bail and arbitrary restriction of liberty under the Eighth and Fourteenth Amendments and Article 33 of the New Hampshire Constitution.

44. 44. On or about November 8, 2021, Staples lawfully testified before a state legislative committee, having cleared security and violated no rules or court orders. Nonetheless, these vague and overly broad bail conditions were later invoked by Prosecutor Charles O'Leary to support a retaliatory motion to revoke Staples' bail. The justification centered entirely on Staples' peaceful attendance at a public hearing and his protected legislative testimony—illustrating the pretextual and punitive nature of the restrictions. This conduct violated Staples' First and Fourteenth Amendment rights, as well as his right to seek redress under Article 32 of the New Hampshire Constitution.

45. 45. The arrest by Newfields Police Officers John Doe 1 and John Doe 2, carried out after Staples peacefully requested identification from an unidentified plainclothes officer believed to be a State Trooper, lacked any probable cause and was immediately followed by excessive bail conditions. These included an overbroad exclusion zone prohibiting Staples from being within 1,000 feet of Governor Sununu or any place he "may be," without exceptions for public or digital civic participation. These measures were pretextual and retaliatory, clearly aimed at chilling Staples' constitutionally protected speech and association. The conduct violated his rights under the First and Fourth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1983 and 1985(3), and Articles 8, 15, 22, and 32 of the New Hampshire Constitution.

45A. The Newfields Police Department, by and through John Doe Officers 1 and 2, engaged in targeted, viewpoint-based enforcement when they singled out Plaintiff Staples for arrest despite identical conduct by other participants. These officers failed to provide any warning or legal justification before seizing him for constitutionally protected conduct—requesting officer identification. The retaliatory arrest and imposition of excessive bail conditions, including a 1,000-foot ban from the Governor, resulted in ongoing limitations on Staples' public participation, press activities, and political expression. This conduct violated the First and Fourth Amendments, the Eighth Amendment's excessive bail clause, and Articles 8, 22, and 33 of the New Hampshire Constitution. The individualized targeting further supports municipal liability under Monell for the Town of Newfields and its police department.

45B. The arrest of Staples by John Doe Newfields Police Officers 1 and 2 was followed by excessive and vague bail conditions imposed without individualized findings. These included a prohibition on Staples' presence within 1,000 feet of Governor Sununu or any location the Governor "may be." These conditions functioned as a prior restraint on speech and assembly, chilling Staples' participation in government meetings, public discourse, and civic journalism. The punitive nature of the arrest and resulting bail restrictions directly harmed Staples' liberty, violated his clearly established rights under the First, Fourth, and Eighth Amendments, and contravened Articles 8, 22, and 33 of the New Hampshire Constitution. This sequence further supports claims of retaliatory enforcement and excessive bail under both federal and state law.

45C. On January 31, 2021, at approximately 7:45 p.m., in the public cul-de-sac near Governor Sununu's residence in Newfields, New Hampshire, Plaintiff Frank Staples was arrested by two uniformed Newfields Police Department officers (currently unidentified and designated as Newfields Doe Defendants 1 and 2) after calmly asking a masked, unidentified officer (believed to be a plainclothes New Hampshire State Trooper) to identify himself. Staples was not engaged in any unlawful conduct, had committed no crime, and had received no dispersal order. The sole instruction given was an ambiguous "stop" without further explanation. When Staples asked, "Stop what, sir?" he was immediately arrested. This unlawful seizure violated Staples' clearly established rights under the First and Fourth Amendments to the U.S. Constitution, as well as Article 19 of the New Hampshire Constitution, and resulted in substantial harm including loss of liberty, emotional distress, and the imposition of retaliatory bail conditions that restricted his movement and civic participation.

45D. On January 31, 2021, Plaintiff Staples suffered specific harm to his liberty, reputation, and future civic access as a result of the arrest executed by Newfields Police Officers John Doe 1 and John Doe 2. The officers initiated contact under the pretext of an undefined "stop" warning, which lacked legal clarity or lawful basis. When Staples sought to clarify the basis for the warning and exercised his right to request officer identification, he was seized without warning and detained. This seizure violated his clearly established rights under the Fourth Amendment and Article 19 of the New Hampshire Constitution, which prohibit unreasonable seizures absent probable cause or exigent circumstances. The retaliatory nature of the arrest was further demonstrated by the immediate imposition of restrictive bail conditions, which chilled Staples' future participation in public meetings and other protected activities.

## C. September 29, 2021 – Executive Council Meeting at Saint Anselm College

46. On September 29, 2021, Plaintiff Frank Staples attended a public Executive Council meeting at Saint Anselm College in Manchester, New Hampshire. During the event, Governor Sununu and Attorney General Formella took actions that resulted in exclusion from public participation, reputational harm, and subsequent misuse of video evidence. These acts violated clearly established rights under the First and Fourteenth Amendments, including the right to participate in public forums and to be free from stigmatizing state action without due process.

47. Hundreds of citizens attempted to attend the September 29, 2021 Executive Council meeting. However, fire code restrictions were selectively enforced to exclude members of the general public, including known political dissidents, while lobbyists and pre-approved individuals were admitted. Plaintiff Frank Staples, who had arrived early with the intent to peacefully observe the meeting, was denied entry despite complying with all visible requirements. The exclusion lacked a legitimate, content-neutral justification and targeted Staples based on his prior civic participation and viewpoint. This disparate treatment caused Staples to be shut out from public deliberations on vital matters of governance, thereby infringing his rights under the First and Fourteenth Amendments, as well as Article 8 and Article 32 of the New Hampshire Constitution.

48. During a break in proceedings, members of the public, including Plaintiff Frank Staples, became aware of fine print within the federal contract under review—particularly provisions perceived to authorize sweeping isolation and quarantine powers. Concerned that such terms undermined civil liberties, Staples engaged in non-disruptive, constitutionally protected speech by exclaiming, "You want to lock me in a FEMA camp? Then do it now! Lock me in a FEMA camp!" This statement was directed at policymakers and reflected Staples' political viewpoint. At no point did he interfere with proceedings or threaten any individual. Nonetheless, his expression was later selectively cited by state officials and prosecutors to justify increased scrutiny, bail conditions, and judicial bias, infringing on his First Amendment rights and causing stigmatic harm.

49. As public concern and frustration intensified, some members of the crowd began chanting "Shut it down!" in protest of what they perceived as an undemocratic and coercive funding measure. The chants were brief, organic, and non-violent. No property was damaged, and no threats were issued. Despite this, the Executive Council adjourned prematurely, attributing the decision to the departure of unspecified staff. This peaceful protest was later mischaracterized by state officials and law enforcement as disruptive and threatening, forming a pretext for retaliatory enforcement, including the arrests on October 13, 2021. The misrepresentation of this event directly contributed to adverse actions against Plaintiffs and chilled future protected speech.

50. Plaintiff Frank Staples was not arrested, cited, or warned by any law enforcement officer during or after the September 29, 2021 Executive Council meeting. Nevertheless, Governor Sununu and Attorney General Formella issued broad public statements falsely characterizing all attendees—including Plaintiffs—as "threatening" and "dangerous." These statements were made despite the absence of any criminal charges or lawful dispersal orders. By failing to distinguish between individuals and by casting dissenting voices as threats, Defendants stigmatized Plaintiffs and created a false public narrative that served as the foundation for later arrests and restrictive bail conditions. This conduct caused reputational injury and constituted viewpoint-based retaliation in violation of the First and Fourteenth Amendments and Article 8 and 22 of the New Hampshire Constitution.

51. Media outlets, including WMUR, circulated selectively edited footage of the September 29, 2021 event, misrepresenting the conduct of Plaintiff Frank Staples and others. The edited broadcasts falsely portrayed Staples as disruptive, despite the fact that he was not filmed engaging in any unlawful or disruptive conduct. These media narratives were amplified by statements from Governor Sununu and Attorney General Formella, creating a climate of public hostility and laying the groundwork for subsequent retaliatory arrests. The coordinated dissemination of false characterizations contributed to a deprivation of liberty and reputation without due process, in violation of the Fourteenth Amendment and Article 14 of the New Hampshire Constitution.

52. Although Plaintiff Staples was not cited or arrested at the September 29, 2021 meeting, footage from that event was later introduced at his October 13 trial. Prosecutors used the unrelated video to prejudice the court against Staples, implying a pattern of misconduct without providing factual or legal foundation. Staples objected to the inclusion of the footage, which was not probative of any element of the charged offense. Its use violated his right to a fair proceeding and further demonstrates the retaliatory misuse of judicial process, supporting claims for abuse of process under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment.

53. The events of September 29 marked a critical escalation in the State's strategy of narrative-building and retaliatory enforcement. Government officials, including Governor Sununu and Attorney General Formella, engaged in coordinated public messaging that falsely portrayed attendees as dangerous and unlawful. This was followed by the selective introduction of

unrelated footage in later prosecutions, confirming that the State intended to frame constitutionally protected protest as criminal. These actions support a claim of viewpoint-based suppression and illustrate the use of surveillance, media coordination, and legal manipulation to chill future civic participation—violations actionable under 42 U.S.C. § 1983 and the First and Fourteenth Amendments.

54. These facts support Plaintiffs' claims for conspiracy, First Amendment retaliation, and malicious misuse of judicial process under 42 U.S.C. §§ 1983 and 1985(3). Plaintiffs specifically allege that on September 29, 2021, Governor Sununu and Attorney General Formella, acting under color of state law, coordinated with law enforcement to create a false public narrative, leading to the use of unrelated footage at Plaintiff Staples' trial. This violated Staples' rights under the First and Fourteenth Amendments, including freedom of speech, freedom of assembly, and due process. These events also implicate Articles 8, 15, 22, and 32 of the New Hampshire Constitution, which guarantee public access to government, fair judicial procedures, liberty of the press, and the right to petition.

54A. The conduct by Governor Sununu and AG Formella on September 29—namely, making public statements falsely labeling Staples and other attendees as "threatening" without any individualized basis, and the subsequent introduction of unrelated footage into court proceedings—constituted reputational deprivation and viewpoint retaliation. These actions caused tangible legal harm by prejudicing Staples' later trial and chilling his future civic participation. The right to be free from retaliatory government defamation and misuse of government power for speech suppression was clearly established by 2021. See Paul v. Davis, 424 U.S. 693 (1976); Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018); Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011). Any reasonable official would have known that singling out a peaceful protestor for reputational damage without charges or evidence of wrongdoing was unconstitutional.

### D. October 13, 2021 – Executive Council Meeting Arrests and Retaliation

55. On October 13, 2021, Plaintiffs Frank Staples and Kathleen Bussiere lawfully attended a public Executive Council meeting held at the New Hampshire Police Standards and Training Facility in Concord, New Hampshire. The meeting was a continuation of the September 29 session, rescheduled following public outcry over federal COVID-19 funding and alleged threats at the prior venue. Plaintiffs assert that Governor Sununu and Attorney General Formella orchestrated the location change and coordinated a preemptive enforcement strategy that included mass arrests. The planning and execution of this operation directly contributed to Plaintiffs' unlawful seizure and retaliation, violating their rights under the First and Fourth Amendments and Articles 8, 10, and 32 of the New Hampshire Constitution.

56. The location was unprecedented: a tactical law enforcement training facility guarded by over 80 officers, including sheriffs, state troopers, and tactical units. At least 10–15 paddy wagons were pre-positioned behind a curtain—indicating that mass arrests had been planned before

any conduct occurred. Plaintiffs allege that this deployment was not in response to any credible threat but was instead part of a premeditated scheme to suppress political dissent. The sheer scale of the operation, coupled with the lack of individualized warnings or unlawful conduct, demonstrates a coordinated intent to chill speech and deter public participation—supporting claims under 42 U.S.C. §§ 1983 and 1985(3), and under Articles 8, 10, and 32 of the New Hampshire Constitution.

57. In advance of the meeting, Governor Sununu was interviewed by WMUR and publicly stated that anyone who "got out of line" would be "removed or arrested." Plaintiff Frank Staples appeared on video stating he planned to remain completely silent to avoid further targeting, having previously been mischaracterized in press coverage of the September 29 event. Staples' expressive silence was itself a form of protected First Amendment conduct. The Governor's preemptive statement, issued before any protest had occurred, evidences viewpoint-based animus and supports Plaintiffs' claim that arrests were orchestrated based on prior speech, not contemporaneous behavior—implicating violations of the First and Fourteenth Amendments and Article 22 of the New Hampshire Constitution.

58. Plaintiff Frank Staples sat calmly in the audience with his hands resting on his cane. He made no disruptive statements, gestures, or movements, and his demeanor was peaceful and non-threatening throughout. Behind him, a live streamer recorded his conduct in full, confirming his silence and passivity. Despite this, at no point did law enforcement issue a dispersal order or individualized warning. The decision to arrest Staples—without any precipitating conduct—constituted a warrantless seizure unsupported by probable cause, in violation of his rights under the Fourth Amendment, and his expressive silence was protected under the First Amendment. These violations also implicate Articles 8, 19, and 22 of the New Hampshire Constitution.

59. On or about October 13, 2021, Plaintiff Frank Staples was tapped on the shoulder by a uniformed officer and told, "Come with us, we need to talk." At the same time, Troopers including Gregory DeLuca and Megan Walsh approached Plaintiff Terese Grinnell, seated beside him. Both were silently seated and not engaged in any disruptive conduct. Staples was escorted behind a curtain, where multiple tactical officers were pre-positioned. There, he was informed he was under arrest for "disorderly conduct." Staples then exclaimed, "We're being arrested!"—his first audible statement during the entire meeting. This sequence constitutes an unlawful seizure in violation of the Fourth Amendment and Article 19 of the New Hampshire Constitution. The arrest, lacking probable cause and targeted solely due to prior civic activity, also violated Staples' First Amendment right to peaceful political expression and dissent.

60. Following Staples' arrest, officers turned to Plaintiff Kathleen Bussiere, who was seated silently between two companions and had not spoken, moved, or disrupted the proceedings in any way. Without providing any warning or verbal order, two New Hampshire State Troopers—whose identities are currently unknown and designated here as John Doe 1 and John Doe 2—grabbed Bussiere by both arms and violently pulled her from her chair. In the process, she struck her head on a hard surface and exhibited signs of concussion shortly

thereafter. This sudden and forceful seizure, devoid of probable cause or lawful instruction, violated her Fourth Amendment right to be free from unreasonable seizure and excessive force, and her First Amendment right to engage in silent, symbolic protest without retaliation.

On October 13, 2021, following her arrest at the Executive Council meeting, Plaintiff Kathleen Bussiere was placed in a New Hampshire State Police transport vehicle (paddy wagon) by officers including John Doe #3 and John Doe #4. She was zip-tied behind her back and not secured with a seatbelt or harness. During transit, she was violently jostled as the vehicle moved, causing her head to repeatedly strike the hard metal surfaces of the interior. Fellow arrestee Monica Holm was forced to use her own body to protect Bussiere from further injury. This neglect of basic detainee safety protocols exacerbated Bussiere's prior head trauma sustained during the arrest and demonstrates deliberate indifference by the officers involved. The failure to restrain her in accordance with standard transport procedures violated her clearly established rights under the Fourth Amendment to be free from excessive force and deliberate indifference to medical needs, as well as Article 19 of the New Hampshire Constitution.

61A. Bussiere believes that she was the only individual among those arrested whose arms were forcibly pulled behind her and zip-tied, despite having remained completely silent and nonresistant throughout the event. This detail highlights the uniquely punitive treatment she endured in contrast to other arrestees, and supports Plaintiffs' claims of viewpoint discrimination and excessive force.

61B. The force used against Plaintiff Bussiere—including dragging her without warning and zip-tying her arms behind her despite passive conduct—was objectively unreasonable. At the time, it was clearly established in the First Circuit that the use of force absent any threat, resistance, or probable cause violates the Fourth Amendment. See Glik v. Cunniffe, 655 F.3d 78, 88 (1st Cir. 2011); Mlodzinski v. Lewis, 648 F.3d 24, 34–35 (1st Cir. 2011). Given Bussiere's total silence and non-engagement, no reasonable officer could have believed this conduct was lawful.

On October 13, 2021, at the Executive Council meeting in Concord, New Hampshire, nine individuals were arrested without warning or individualized probable cause. The majority, including Plaintiff Kathleen Bussiere, had engaged only in a silent symbolic protest—turning their backs to the Council without making noise or causing disruption. Despite the fact that more than 90% of the audience participated in this same gesture, arrests were limited to individuals perceived to be affiliated with dissenting groups or prior demonstrations. Bussiere, who had no organizational affiliation and had not spoken during the event, was nonetheless seized and arrested by John Doe Officers under color of state law. This selective enforcement violated her clearly established rights under the First and Fourth Amendments and Articles 8, 19, and 32 of the New Hampshire Constitution.

63. Immediately prior to the mass arrests on October 13, 2021, Governor Christopher Sununu was visibly engaged in active text communication with law enforcement officials stationed at the Executive Council meeting. Witnesses observed Attorney General John Formella approach the

Governor and confer in a whisper, after which further text exchanges occurred. Within minutes, law enforcement conducted a coordinated sweep targeting only certain individuals—those previously identified with civic dissent. This sequence of conduct evidences direct executive involvement in authorizing the arrests of Plaintiff Frank Staples and others, resulting in their unlawful seizure and exclusion from public proceedings. These acts violated Staples' clearly established rights under the First and Fourth Amendments and Articles 8, 14, 19, and 32 of the New Hampshire Constitution.

64. Following their arrests on October 13, 2021, Plaintiffs Frank Staples and Kathleen Bussiere were subjected to bail conditions that were vague, punitive, and unlawfully restrictive. Specifically, Staples was barred from attending any future public Executive Council meetings and from being in proximity to the Governor or any Executive Councilor—without geographic or temporal limits. Bussiere, despite having engaged in no disruptive behavior, was likewise subjected to conditions treating her as a public threat without any individualized finding. These bail terms constituted a prior restraint on protected speech, denied access to public governance, and inflicted ongoing reputational harm. This conduct violated Plaintiffs' clearly established rights under the First, Fifth, and Fourteenth Amendments, as well as Articles 8, 14, 22, 32, and 33 of the New Hampshire Constitution.

65. The arrests of Frank Staples and Kathleen Bussiere on October 13, 2021, were conducted without probable cause, without any lawful dispersal order, and in a manner constituting excessive force. Staples, seated silently with a cane, was seized without provocation or warning. Bussiere, also silent and non-disruptive, was violently dragged from her seat by two officers, zip-tied with her hands behind her back, and transported in an unsafe vehicle without restraints. She was the only arrestee subjected to rear zip-tying, despite being one of the least physically mobile participants, and the only one who remained completely passive. These actions were not based on any articulable suspicion of wrongdoing but appeared targeted due to perceived association or assumed affiliation. The specific harm included physical injury, deprivation of liberty, humiliation, and suppression of civic participation. These seizures and the force employed violated clearly established rights under the Fourth and First Amendments and Articles 8, 19, and 22 of the New Hampshire Constitution.

65A. The events described herein occurred simultaneously with those involving plaintiffs in Todd v. Sununu, Case No. 1:24-cv-00330 (D.N.H.). Plaintiffs Staples and Bussiere were arrested alongside plaintiffs Todd, Grinnell, Holm, and others during a coordinated sweep executed by the New Hampshire State Police. These arrests, all occurring without individualized warnings or probable cause, reflect a broader policy or practice of suppressing dissent through pretextual enforcement. While Staples and Grinnell were visibly affiliated with Absolute Defiance and had been present at the September 29 meeting, Bussiere had no known association with any organization or event prior to October 13. Her arrest and treatment were thus based on mere proximity or assumed affiliation, further underscoring the indiscriminate and retaliatory nature of the enforcement. The overlap in factual allegations and legal theories between this case and Todd supports the inference of a systemic, viewpoint-based targeting campaign by state and local officials.

65B. In both cases, Governor Sununu was observed texting law enforcement prior to the arrests, which were carried out without dispersal orders, individualized warnings, or probable cause. At the October 13 meeting, video confirms that nearly all attendees turned their backs in silent protest, yet only known dissidents—including members or perceived associates of Absolute Defiance—were targeted. Even individuals with no known prior affiliation, such as Kathleen Bussiere, were violently arrested without explanation. The similarity in the sequence of arrests, use of excessive force, and selective enforcement confirms a unified policy or custom of suppressing protected political expression, actionable under Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

65C. On October 13, 2021, at approximately [insert time], Plaintiff Kathleen Bussiere was seated silently in the audience when Defendant John Doe Officer of the New Hampshire State Police [or Newfields Police Department] approached and physically dragged her from her seat without warning. This occurred despite her total silence and non-engagement in any disruptive behavior. Plaintiff sustained a concussion and bruising, and was transported without restraint in a paddy wagon. This conduct violated her clearly established rights under the First and Fourth Amendments. At the time, it was well-settled that peaceful protest in a public forum could not justify arrest or use of force absent lawful orders or probable cause. See Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011).

66. These events represent a culmination of the State's pattern of surveillance, retaliatory enforcement, and viewpoint-based exclusion. The conduct violates the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and supports claims under 42 U.S.C. §§ 1983 and 1985(3), as well as Articles 2-b, 8, 10, 14, 15, 19, 22, 32, and 33 of the New Hampshire Constitution.

66A. The allegations in this Complaint mirror those presented in Todd v. Sununu, where plaintiffs described an identical pattern of retaliation and viewpoint-based suppression at the October 13, 2021, Executive Council meeting. As in this case, the Todd plaintiffs stood silently and turned their backs to peacefully protest. Despite no disruptions, they were forcibly arrested and charged. Their complaint—filed with this Court—asserts violations of the First, Fourth, Fifth, and Eighth Amendments, as well as Articles 8, 15, 22, and 32 of the New Hampshire Constitution.

66B. Video evidence and witness accounts confirm that Governor Sununu was actively texting law enforcement officers immediately prior to the wave of arrests. Attorney General John Formella approached Sununu, conferred briefly, and returned to the law enforcement staging area. Within moments, coordinated arrests commenced without any prior warning or dispersal order. This sequence, and the selective targeting of known dissenters such as Plaintiffs Staples and Bussiere, confirms an intentional plan executed by high-ranking state officials in collaboration with law enforcement. These acts violated Plaintiffs' clearly established rights under the First and Fourth Amendments, including freedom of expression and freedom from unreasonable seizure, as well as corresponding protections under Articles 8, 19, and 32 of the New Hampshire Constitution. The deliberate choice to arrest only certain protesters—those

previously identified as political critics—establishes a pattern of retaliatory enforcement actionable under Monell and 42 U.S.C. §§ 1983 and 1985(3).

### E. November 8, 2021 – State House Testimony and Bail Retaliation

67. On November 8, 2021, Plaintiff Frank Staples lawfully entered the New Hampshire State House to testify during a public hearing on proposed COVID-19 vaccine-related legislation. Staples passed through public security checkpoints, complied with all rules, and was not asked to leave. While in the building, Staples was questioned by Trooper Shirley about his presence, to which he replied, "You can arrest me if you want, but I'm here to testify," and "Let the Governor know I'm in the building," referencing his lawful intent to participate in the democratic process. These statements were made calmly and lawfully and are constitutionally protected expressions under the First Amendment (right to petition and freedom of speech) and Articles 8, 22, and 32 of the New Hampshire Constitution. Staples' attendance did not violate any law or bail condition, and he engaged in no disruptive or threatening behavior. The specific conduct—peacefully testifying in a legislative forum—was met with retaliatory harm in the form of a bail revocation motion filed by Defendant Charles O'Leary, which falsely alleged that Staples' lawful speech and presence constituted a threat. This incident resulted in a chilling of Staples' political participation, reputational harm, and ongoing legal entanglement, in direct violation of clearly established constitutional rights.

67A. Defendant Charles O'Leary, a prosecutor within the New Hampshire Department of Justice, subsequently filed an expedited motion to revoke Plaintiff Staples' bail, citing his lawful presence and protected speech at the State House as the basis for detention. The motion falsely framed Staples' statement—"Let the Governor know I'm in the building"—as a security threat, despite it being a lawful and non-confrontational comment during a public hearing. This retaliatory prosecution constituted abuse of process and a violation of procedural due process under the Fourteenth Amendment, as well as Articles 14 and 32 of the New Hampshire Constitution. The motion was not grounded in any new criminal conduct or lawful basis but instead weaponized bail procedures to punish protected civic activity. The specific harm included ongoing legal jeopardy, suppression of legislative participation, and continued chilling of Staples' First Amendment rights.

67B. At the time of the motion to revoke bail, it was clearly established that conditions restricting speech, access to government buildings, or peaceful political participation could not be imposed absent compelling governmental interests and narrowly tailored justifications. Staples' attendance at the State House was constitutionally protected under the First Amendment and did not violate any lawful condition of release. The retaliatory use of bail proceedings to restrict his speech and presence in public forums contravened well-settled law, including Bearden v. Georgia, 461 U.S. 660 (1983), and Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011),* which affirm that courts may not punish individuals for constitutionally protected conduct or impose vague, punitive bail conditions absent due process. Defendant O'Leary's motion—predicated on legally

protected speech—was constitutionally infirm and contributed to the broader pattern of viewpoint discrimination and retaliatory judicial misuse.

68. Upon entering the State House, Plaintiff Staples passed through standard security checkpoints without incident. Once inside, he was approached by Trooper Shirley, who questioned his presence. Staples calmly responded, "You can arrest me if you want, but I'm here to testify," and further remarked, "Let the Governor know I'm in the building." These statements were not disruptive or threatening, but rather assertions of Staples' lawful right to participate in a public legislative hearing. He made no effort to approach or engage with Governor Sununu and was seated peacefully with other attendees. Staples' speech and presence were constitutionally protected under the First Amendment, and his interactions did not violate any existing condition of bail or legal restriction.

69. Plaintiff Staples testified briefly before the legislative committee regarding proposed COVID-19 vaccine legislation. His testimony was respectful, focused on public policy concerns, and delivered without incident. He did not mention Governor Sununu by name, make any personal accusations, or violate any rules of decorum. After his testimony, Staples exited the building without further interaction with staff, legislators, or the Governor. There was no disruption, and no official raised any objection to his presence. His conduct remained within the bounds of protected civic engagement under the First and Fourteenth Amendments, as well as Articles 8, 14, and 32 of the New Hampshire Constitution.

70. Nonetheless, just days later, Defendant Charles O'Leary, a prosecutor with the New Hampshire Department of Justice, filed an expedited motion to revoke Staples' bail. The motion falsely alleged that Staples' presence at the State House was unlawful and framed his peaceful testimony as a threat. No specific conduct was cited as unlawful, and the State failed to provide any supporting evidence that Staples had violated his bail conditions. The motion was based entirely on Staples' protected speech and his physical presence in a public building. This misuse of prosecutorial discretion to punish political expression violated Staples' clearly established rights under the First and Fourteenth Amendments, and Articles 8, 14, and 32 of the New Hampshire Constitution. At the time, it was well-settled that attending and speaking at legislative hearings constituted core protected activity.

70A. On information and belief, O'Leary's motion to revoke bail was motivated not by safety concerns or risk of flight, but by animus toward Staples' political expression. The conduct cited—being present at the State House, speaking publicly, and carrying a lawful, sheathed tool—was not prohibited by any statute or court order. The vague and unreviewed 1,000-foot bail condition was not narrowly tailored to a legitimate governmental interest. The use of this condition to punish attendance at a public hearing violated clearly established First and Fourteenth Amendment rights.

70B. At the time of these events, the law was clearly established that public testimony at a legislative hearing is protected speech. No reasonable prosecutor could have believed that attending a public hearing and speaking lawfully constituted a violation justifying detention.

Courts have long held that retaliatory enforcement actions based on speech are unconstitutional. See Carey v. Population Services Int'l, 431 U.S. 678, 686 (1977); Ostergren v. Cuccinelli, 615 F.3d 263, 273 (4th Cir. 2010). As such, Defendant O'Leary is not entitled to qualified immunity.

71. The bail revocation motion further cited Staples' lawful possession of a sheathed knife during his visit—an item carried openly and without brandishing, and which was permitted under all relevant laws and building regulations. Staples had entered through security screening without incident and received no warning or notice that his presence, conduct, or possessions were prohibited. No allegation was made that Staples attempted to approach the Governor or any protected individual. Defendant O'Leary's reliance on this lawful conduct as a basis for revocation reflects a deliberate attempt to distort lawful behavior into grounds for pretrial punishment. This action lacked legal foundation and contravened Staples' clearly established rights under the Fourth and Fourteenth Amendments, and Articles 14, 15, and 33 of the New Hampshire Constitution.

72. On November 18, 2021, Plaintiff Staples appeared for a bail revocation hearing in compliance with court orders. The presiding judge acknowledged on the record that the alleged conduct, even if proven, constituted at most a Class B misdemeanor and did not justify detention or modification of bail. Despite the absence of any new charges or findings of dangerousness, Staples remained subject to the original overbroad and vague bail conditions. These restrictions—including spatial and digital exclusions from political forums—continued to impair his constitutionally protected rights to speech, assembly, and petition. The Court's decision to leave these restrictions unaltered, without findings or tailored justification, constituted a deprivation of procedural due process and a chilling prior restraint on political expression.

72A. The law was clearly established that criminal bail conditions may not be used to chill speech or punish political dissent. See Carey v. Population Services Int'l, 431 U.S. 678, 686 (1977) (restrictions that suppress protected expression are subject to strict scrutiny); Doe v. Gallinot, 657 F.2d 1017, 1021 (9th Cir. 1981) (bail conditions must be justified by legitimate concerns); Ostergren v. Cuccinelli, 615 F.3d 263, 273 (4th Cir. 2010) (retaliation for protected speech actionable under § 1983). No reasonable prosecutor could believe that testifying before the legislature while lawfully present and not warned or arrested was grounds for detention. The rights violated were "clearly established" such that O'Leary is not entitled to qualified immunity.

73. These events reflect a targeted effort by state officials to weaponize the bail system against Plaintiff Staples in retaliation for his peaceful civic participation. No other attendee at the November 8 hearing was investigated, questioned, or accused of misconduct—despite identical conduct. Staples' prosecution was not based on any legitimate safety concern or risk of flight but was instead a response to his public testimony and lawful presence at the State House. This selective targeting, coupled with the pretextual use of vague and burdensome bail terms, violated clearly established rights under the First and Fourteenth Amendments and constitutes actionable retaliation, abuse of process, and viewpoint-based discrimination under 42 U.S.C. §§ 1983 and 1985(3).

74. Prosecutor Charles O'Leary's motion to revoke Staples' bail cited Staples' presence at a public hearing—conduct that was constitutionally protected under the First Amendment—as justification for incarceration. The motion further referenced Staples' lawful possession of a sheathed knife, though no statute, regulation, or court order prohibited such conduct, and Staples had passed through all public security screenings. At no point was Staples warned or notified that his actions could be construed as violations. This misuse of prosecutorial power to punish protected political expression and presence at the State House constitutes an egregious violation of Staples' procedural due process rights under the Fourteenth Amendment, and is consistent with a broader pattern of retaliatory conduct in violation of § 1983 and § 1985(3). The motion to revoke bail was not only legally baseless but functioned as a chilling mechanism aimed at deterring Staples—and similarly situated individuals—from exercising their rights of expression, petition, and civic participation.

74A. On November 8, 2021, Staples entered the State House in Concord, NH. He passed through security without incident. When asked by Trooper Shirley about his presence, Staples replied: "You can arrest me if you want, but I'm here to testify." He testified peacefully and exited without incident. On November 10, Defendant O'Leary filed a motion to revoke bail, falsely alleging that Staples violated court conditions. This conduct caused emotional distress, chilled future participation, and prolonged unlawful restrictions on Staples' liberty. The retaliation violated Staples' rights under the First, Fifth, and Fourteenth Amendments, and Articles 8, 14, and 32 of the New Hampshire Constitution.

*F. November 19, 2021 – Fiscal Committee Meeting Arrest*

75. On November 19, 2021, at the Legislative Office Building in Concord, Plaintiff Frank Staples lawfully attended a public Fiscal Committee meeting to observe deliberations on federal COVID-19 relief funding. The building was crowded, and overflow areas lacked functioning video or audio feeds. Staples remained quietly in a hallway outside the committee room. During the session, he was visibly monitored by Defendant Trooper Gregory DeLuca, who had previously ordered Staples' arrest on October 13. After the meeting concluded, law enforcement officers began clearing the hallway. Staples voiced concern to DeLuca about the safety of a woman holding a baby who had not yet exited. In response to Staples' brief comment—expressing frustration by exclaiming "Tyrants!"—DeLuca abruptly seized and arrested him without warning, probable cause, or any dispersal order. Staples was handcuffed and zip-tied and transported to a holding facility. These actions constituted an unlawful seizure and retaliatory enforcement in violation of Staples' clearly established rights under the First and Fourth Amendments and Articles 8, 19, and 32 of the New Hampshire Constitution.

75A. 75A. On November 19, 2021, at the Legislative Office Building in Concord, New Hampshire, Defendant TROOPER GREGORY DELUCA arrested Plaintiff FRANK STAPLES after Staples peacefully voiced concern for a woman holding a baby amid unsafe crowd conditions and then exclaimed "Tyrants!"—a form of expressive protest. The specific conduct

was constitutionally protected political speech made without disruption or threat. The specific harm was Staples' arrest, physical restraint with zip ties, reputational damage, and continued subjection to vague bail restrictions. The specific rights violated were the First Amendment (political speech), Fourth Amendment (freedom from unreasonable seizure), and Articles 8, 19, and 32 of the New Hampshire Constitution.

76. At the time of his arrest on November 19, 2021, Plaintiff Frank Staples was peacefully present in a public hallway, did not obstruct any passageways, and posed no threat or disruption. No officer issued a dispersal order or provided any lawful instruction that Staples failed to follow. Defendant Gregory DeLuca's decision to arrest Staples for voicing concern about another attendee's safety, and for uttering the word "Tyrants!" in a political context, was not supported by probable cause. Staples' arrest was retaliatory, motivated by his known political activism, and followed a pattern of surveillance and viewpoint discrimination by the State Police. The harm suffered included deprivation of liberty, stigmatization, and further imposition of restrictive bail conditions—all in violation of the Fourth Amendment and Articles 8, 19, and 22 of the New Hampshire Constitution.

77. Defendant Gregory DeLuca, acting under color of state law and without lawful justification, shadowed Plaintiff Staples throughout the Fiscal Committee meeting on November 19, 2021. DeLuca, who had previously ordered Staples' arrest on October 13, 2021, tracked his movements in the hallway, coordinated with other officers, and positioned himself in anticipation of confrontation. This conduct, devoid of any legitimate public safety rationale, constituted surveillance based on political identity and viewpoint. DeLuca's actions were part of a larger retaliatory strategy aimed at intimidating Staples and deterring his continued participation in civic life, in violation of clearly established rights under the First and Fourth Amendments, and Articles 8 and 22 of the New Hampshire Constitution.

78. Following the Committee's vote, law enforcement began pushing attendees toward the exits. No dispersal order, individualized instructions, or lawful directive was given. When Plaintiff Staples observed a mother holding a baby still standing in the hallway, he verbally expressed concern to Trooper DeLuca about the crowd movement and the lack of clear guidance. DeLuca ignored the concern. Staples then referenced the October 13 arrests, saying, "Tyrants!" This isolated and non-threatening statement of protest, made in the context of a peaceful exit, was immediately used as pretext to escalate enforcement. The statement was protected political speech, and its use to justify immediate arrest violated clearly established rights under the First and Fourth Amendments, and Articles 8, 22, and 32 of the New Hampshire Constitution.

79. Immediately after Staples' brief political outcry, Trooper Gregory DeLuca—who had previously arrested Staples on October 13—rushed toward him, seized him without warning or instruction, and placed him under arrest. No probable cause was established. Staples was handcuffed and zip-tied behind his back, despite offering no resistance. He was not informed of the charge or basis for arrest at the time of seizure. This conduct constituted an unreasonable seizure in violation of clearly established rights under the Fourth Amendment and Article 19 of

the New Hampshire Constitution. The retaliatory nature of the arrest, following protected speech, also supports a claim of First Amendment retaliation under 42 U.S.C. § 1983.

80. At Staples' arraignment following the November 19 arrest, no prosecutor appeared, no formal charges were presented, and the matter was summarily continued without judicial explanation. Staples remained subject to the same vague and overbroad bail conditions that had previously restricted his liberty, including exclusions from public meetings and proximity to government officials. These proceedings lacked due process and served no legitimate adjudicative function, instead operating as a continuation of retaliatory legal harassment. The procedural irregularities, including absence of counsel and judicial findings, violated Staples' rights under the Fourteenth Amendment and Article 14 of the New Hampshire Constitution.

81. Initially, the State accused Staples of disorderly conduct based on the statement, "bootlickers." However, no official charging document was presented at the arraignment. Later, the State shifted its theory, alleging instead that Staples had said, "fuck around and find out." Staples denies making either statement. Even if uttered, these remarks are constitutionally protected under the First Amendment and do not satisfy the elements of disorderly conduct under New Hampshire law. The evolving and inconsistent nature of the accusations underscores the arbitrary and retaliatory nature of the prosecution. The shifting rationale, unsupported by credible evidence or judicial oversight, exemplifies procedural abuse and viewpoint-based targeting.

82. After aggressively pursuing prosecution for several months, including filing bail motions and shifting accusations, Prosecutor Charles O'Leary failed to appear for trial in the November 19 case. No evidence was presented, and the State was unrepresented. Staples' motion to dismiss was granted with prejudice. O'Leary then filed a motion for reconsideration to revive the dismissed case, which Staples timely opposed. The court denied the State's motion and upheld the dismissal. This sequence underscores the retaliatory and unserious nature of the prosecution and illustrates a broader pattern of weaponized legal process used not to secure justice, but to harass and chill Staples' civic participation in violation of his First and Fourteenth Amendment rights.

82A. The conduct of Trooper DeLuca and Prosecutor O'Leary on November 19, 2021, was unlawful under clearly established precedent. It has been well-settled that police may not arrest individuals without probable cause, and that speech—even provocative or critical—cannot be criminalized merely because it is unpopular or directed at law enforcement. See Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Hill v. Colorado, 530 U.S. 703 (2000). Their actions were part of an ongoing retaliatory campaign, further evidenced by the fact that Staples' prosecution was later dismissed with prejudice after the State failed to appear at trial.

83. The November 19, 2021, arrest and prosecution of Frank Staples represented a continuation of a deliberate campaign to suppress political dissent through pretextual enforcement and retaliatory legal action. Staples' lawful attendance at a public meeting, his concern for another citizen, and his verbal protest—none of which constituted unlawful

conduct—were met with immediate arrest, restrictive bail, and months of prosecutorial pursuit. The harm included loss of liberty, emotional trauma, reputational injury, and further restrictions on civic engagement. These acts violated clearly established rights under the First, Fourth, and Fourteenth Amendments, and Articles 8, 14, 15, 22, and 32 of the New Hampshire Constitution.

84. These acts were not isolated. They form part of a consistent and escalating pattern of conduct by Defendants to chill the political expression and civic participation of Frank Staples and others similarly situated. Each retaliatory arrest—beginning with citations at the December 28, 2020 vigil, followed by the January 31, October 13, and November 19, 2021 arrests—was carried out by the same core group of state and local actors. In each case, enforcement occurred without prior warning, probable cause, or lawful justification. The accompanying bail conditions were vague, speech-restrictive, and functioned as de facto bans from political participation. The harm inflicted on Staples included not only repeated deprivations of liberty and due process, but also a prolonged and targeted exclusion from the democratic process. This pattern of suppression violated clearly established rights under the First and Fourth Amendments and Articles 8, 14, 15, 19, and 32 of the New Hampshire Constitution.

84A. The cumulative sequence of retaliatory conduct by Defendants—from pretextual citations, warrantless arrests, and excessive bail conditions to selective prosecution and courtroom manipulation—demonstrates a coordinated strategy of suppression rooted in viewpoint discrimination. Plaintiffs were not engaging in disruptive or unlawful conduct but rather exercising core civic rights, including attending public meetings, organizing peaceful vigils, and providing legislative testimony. Each arrest was followed by procedural abuse, such as filing unsupported charges, shifting prosecutorial narratives, or failing to appear at trial. This pattern was not only foreseeable but unlawful under well-established precedent. Courts have long held that political dissent cannot be criminalized through manufactured enforcement or strategic judicial interference. See Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Hartman v. Moore, 547 U.S. 250 (2006). Plaintiffs' experiences illustrate a systemic breakdown in constitutional protections, warranting both declaratory and structural relief under 42 U.S.C. § 1983 and related authority.

## SECTION V – CAUSES OF ACTION

### Count I: Retaliation for Protected Speech – First Amendment (42 U.S.C. § 1983)

85. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86. Plaintiffs Staples and Bussiere engaged in constitutionally protected expressive activity on matters of public concern, including organizing and attending peaceful vigils, testifying before the New Hampshire legislature, and attending Executive Council meetings in silent protest.

These activities occurred on specific dates including December 28, 2020; January 31, 2021; September 29, 2021; October 13, 2021; November 8, 2021; and November 19, 2021.

87. In retaliation for this protected speech, Defendants took the following adverse actions:

On January 31, 2021, two unidentified Newfields Police Officers ("John Doe Newfields 1 and 2") arrested Plaintiff Staples for peacefully singing carols and requesting identification from an officer who refused to comply. This led to unconstitutional bail conditions restricting Staples' freedom of movement and speech. (First and Fourth Amendments; Article 8, 22, 32 NH Constitution)

On October 13, 2021, Defendant Trooper Gregory DeLuca and John Doe Officers seized Plaintiff Staples without cause while he sat silently, and violently dragged Plaintiff Bussiere from her seat without warning. Bussiere was the only individual zip-tied behind her back, despite offering no resistance. (First, Fourth Amendments; Articles 8, 19, 22 NH Constitution)

On November 8, 2021, Defendant Prosecutor Charles O'Leary filed a retaliatory motion to revoke Staples' bail based solely on his peaceful legislative testimony at the State House, falsely portraying him as a threat. (First and Fourteenth Amendments; Article 8, 14 NH Constitution)

On November 19, 2021, DeLuca again arrested Staples without probable cause following a verbal criticism ("Tyrants!") uttered in response to police pushing a woman with a baby. Prosecutors then altered their theory of the case midstream, further evidencing retaliatory motive. (First and Fourth Amendments; Article 8, 19, 22 NH Constitution)

88. These actions were not taken pursuant to any neutral or content-neutral enforcement strategy, but were initiated directly in response to Plaintiffs' political views and civic engagement. The enforcement pattern—including selective arrests, public disparagement, and mischaracterization of Plaintiffs' activities—was motivated by viewpoint-based animus and designed to chill future participation in protected First Amendment activities.

89. Plaintiffs Staples and Bussiere were treated differently from similarly situated individuals. For example, on October 13, 2021, although over 90% of attendees turned their backs in silent protest, only Plaintiffs and other known or assumed dissenters were arrested. No warnings, dispersal orders, or opportunity to comply were provided to any arrestee. The disparate treatment of Plaintiffs—especially Bussiere, who had no prior organizational affiliation—demonstrates that enforcement was not based on conduct, but identity and perceived political alignment.

90. The retaliatory actions of Defendants—including arrests, bail conditions, and public statements branding Plaintiffs as "extremists" and "anti-vaxxers"—would deter a person of ordinary firmness from continuing to engage in protected political expression. Plaintiffs have in

fact suffered actual chilling effects, including exclusion from public meetings, fear of further retaliation, and self-censorship.

91. These injuries—comprising loss of liberty, reputational harm, public humiliation, emotional distress, and exclusion from civic engagement—were proximately caused by Defendants' coordinated actions and were reasonably foreseeable given the nature of the conduct. Plaintiffs seek redress for violations of their clearly established First Amendment rights, which a reasonable official would have known were protected at the time of the conduct described.

92. As a direct and proximate result of Defendants' conduct—including arrests without probable cause, malicious bail enforcement, public defamation, and selective targeting—Plaintiffs suffered tangible and intangible injuries. These include physical deprivation of liberty, exclusion from civic processes, reputational damage, emotional trauma, and professional disruption. The nature and extent of these harms are compensable under 42 U.S.C. § 1983 and related equitable doctrines.

93. Defendants acted with intent, malice, and deliberate indifference to Plaintiffs' clearly established First Amendment rights. The pattern of conduct reveals a conscious disregard for constitutional norms and the unlawful use of state power to penalize dissent.

94. Plaintiffs seek full and appropriate relief, including declaratory and injunctive remedies, expungement of arrest records, compensatory and punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1988. The relief requested is necessary to redress the continuing harm and deter future violations.

95. Defendants' actions also constituted unconstitutional viewpoint discrimination. Plaintiffs were arrested, silenced, and stigmatized because of their expressed opposition to state policy and executive decisions. By contrast, similarly situated individuals who remained silent or expressed support for the government were not subject to any adverse consequences. Such content- and viewpoint-based enforcement is presumptively unconstitutional and per se unlawful under the First Amendment.

95A. The complaint in Todd v. Sununu, filed contemporaneously in this District, corroborates the selective and retaliatory nature of the October 13 arrests. Plaintiffs in that case, including Grinnell and Holm, were arrested solely for silently turning their backs at the same Executive Council meeting. The arresting officers, enforcement tactics, and legal justifications mirror those described in this action. Together, the pleadings in both cases establish a systemic pattern of viewpoint suppression actionable under both federal and state law.

95B. Defendants argue in their motions to dismiss that Plaintiffs' claims are conclusory or fail under Iqbal and Twombly standards. However, Plaintiffs have pleaded date-specific factual allegations involving named and Doe defendants, tied to specific constitutional harms. For example, Staples was arrested by Newfields Police Officers John Doe #1 and John Doe #2 on January 31, 2021, after requesting identification from a masked officer suspected to be a

plainclothes State Trooper. The arrest followed protected expressive conduct—peaceful caroling and an inquiry for identification—and resulted in unlawful seizure, loss of liberty, and restrictive bail conditions. These facts support a plausible claim of First Amendment retaliation and viewpoint discrimination, as Staples was the only person cited and arrested despite identical conduct by others. The arrest violated Staples' clearly established rights under the First and Fourth Amendments, as well as Articles 8, 19, and 32 of the New Hampshire Constitution. Dismissal is therefore inappropriate at this stage.

95C. Defendants' conduct violated clearly established First Amendment rights. By 2020–2021, it was well-settled in the First Circuit that arrests or legal sanctions imposed in retaliation for protected political speech are unconstitutional. See Nieves v. Bartlett, 139 S. Ct. 1715 (2019) (requiring absence of probable cause); Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) (affirming First and Fourth Amendment rights in public spaces). The viewpoint-based suppression alleged here—singling out Plaintiffs for peaceful dissent while tolerating others—was constitutionally impermissible under decades of binding precedent.

### Count II: Unlawful Seizure and Excessive Force – Fourth Amendment (42 U.S.C. § 1983)

96. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97. The Fourth Amendment to the United States Constitution, incorporated against the States through the Fourteenth Amendment, guarantees the right to be free from unreasonable searches and seizures. It prohibits arrests without probable cause and the use of excessive force by government actors. These rights were clearly established at the time of the events in question, including under controlling First Circuit precedent. See Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011); Jennings v. Jones, 499 F.3d 2 (1st Cir. 2007).

98. Plaintiff Frank Staples was unlawfully seized and arrested without probable cause on four separate occasions: (1) December 28, 2020, for participating in a peaceful vigil; (2) January 31, 2021, for asking an officer to identify himself during a caroling event; (3) October 13, 2021, for sitting silently at an Executive Council meeting; and (4) November 19, 2021, for allegedly raising his voice in a public hallway. In each instance, there was no disruptive conduct, dispersal order, or individual warning prior to seizure. The arrests were arbitrary, pretextual, and carried out in violation of clearly established constitutional rights.

99. Plaintiff Kathleen Bussiere was similarly seized without lawful basis on October 13, 2021. She was seated silently in the audience at a public Executive Council meeting when she was suddenly and forcibly removed by two officers—identified during discovery as members of the New Hampshire State Police—without any verbal warning, dispersal order, or notice of cause. She was not engaged in any expressive conduct, verbal protest, or physical resistance. This seizure was carried out in a manner that violated clearly established rights under the Fourth

Amendment and Article 19 of the New Hampshire Constitution, which both prohibit arbitrary arrest and detention absent probable cause.

100. The force used against Plaintiff Bussiere was objectively excessive and unjustified. Officers dragged her by her arms from her seat, zip-tied her hands behind her back—despite her physical limitations and lack of resistance—and placed her into a metal transport van without securing her with a seatbelt or restraint. As the van moved, she repeatedly struck her head against the interior walls, sustaining visible bruises and a concussion. Bussiere was the only arrestee subjected to rear zip-tying, despite being one of the most physically vulnerable individuals present. This treatment violated clearly established legal standards, including those articulated in Kingsley v. Hendrickson, 576 U.S. 389 (2015), and applicable New Hampshire precedent on excessive force and detainee safety.

101. Neither Staples nor Bussiere posed a threat, resisted, or ignored any lawful instruction. The force used—particularly in the context of nonviolent protest and silent assembly—was unreasonable, retaliatory, and constitutionally impermissible. The lack of probable cause, absence of warning, and disproportionate application of physical restraint render these seizures and the associated force patently unlawful. The injuries and emotional trauma suffered by both Plaintiffs were a direct and foreseeable result of this unconstitutional conduct.

102. The coordinated conduct of Defendants—including Trooper Gregory DeLuca, Trooper Megan Walsh, and other unnamed New Hampshire State Police officers (John Does 1–100)—was carried out under color of state law and in violation of clearly established constitutional protections. These officers either directly participated in or failed to prevent the unlawful seizures and use of force described above. Their actions were not isolated but followed an established pattern of targeting political dissenters, consistent with prior incidents involving Plaintiff Staples and other protestors.

103. As a result of the unlawful arrests and use of excessive force, Plaintiffs suffered a range of tangible and intangible injuries, including: physical injuries (concussion, bruising, and pain), deprivation of liberty, reputational harm, and emotional trauma. The arrests also subjected both Plaintiffs to restrictive, vague, and punitive bail conditions that further curtailed their participation in public life and chilled future political engagement. These harms were compounded by media mischaracterizations and public statements by state officials branding Plaintiffs as dangerous or extremist without evidence.

104. Plaintiffs seek declaratory and injunctive relief affirming the illegality of their arrests and treatment, the expungement of related arrest records, and both compensatory and punitive damages to address the injuries suffered. Plaintiffs also seek reasonable attorneys' fees under 42 U.S.C. § 1988. These claims are brought pursuant to the Fourth Amendment of the U.S. Constitution, as incorporated by the Fourteenth Amendment, and Article 19 of the New Hampshire Constitution, which collectively prohibit unreasonable searches and seizures and the use of excessive force by law enforcement.

104A. Plaintiffs' Fourth Amendment rights were clearly established at the time of each arrest. It has long been the law in this Circuit that an arrest without probable cause violates the Fourth Amendment, and that officers are not entitled to qualified immunity where the absence of probable cause is not even arguable. See Glik v. Cunniffe, 655 F.3d 78, 88–89 (1st Cir. 2011); Thompson v. Clark, 142 S. Ct. 1332 (2022). Given the peaceful, non-disruptive nature of Plaintiffs' conduct and the lack of dispersal orders or individualized warnings, no reasonable officer could have believed these arrests were lawful.

### Count III: Deprivation of Procedural Due Process and Abuse of Process – Fourteenth Amendment (42 U.S.C. § 1983)

105. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein. This Count arises under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and related provisions of the New Hampshire Constitution, including Articles 14 and 15.

106. On or about October 13, 2021, and November 19, 2021, Plaintiff Frank Staples was subjected to bail conditions that were vague, overbroad, and punitive. These included restrictions barring him from attending public Executive Council meetings, from being within 1,000 feet of Governor Sununu or "any place he may be," and from participating in public testimony or digital public governance. These restrictions were imposed without individualized findings of dangerousness, without opportunity for meaningful contest, and without any nexus to public safety or risk of flight. The harm included denial of access to democratic processes, stigmatization, and prolonged restriction of constitutionally protected conduct.

107. On or about October 13, 2021, Plaintiff Kathleen Bussiere was likewise arrested without probable cause and subjected to restrictive bail conditions despite never engaging in any disruptive conduct. The restrictions excluded her from public forums without explanation or hearing, and with no lawful basis. These post-arrest limitations were based not on evidence or individualized risk but on assumed affiliation with other protestors. The harm included unlawful deprivation of liberty, reputational injury, and exclusion from future civic engagement. These conditions violated Bussiere's clearly established rights under the Fourteenth Amendment, as well as Articles 8, 14, and 32 of the New Hampshire Constitution.

108. On or about November 8, 2021, Defendant Prosecutor Charles O'Leary filed a motion to revoke Plaintiff Frank Staples' bail based on his peaceful testimony at a public legislative hearing. The motion falsely characterized Staples' lawful presence at the State House and his protected political speech as threats, citing no violations of law or credible safety concerns. The motion also referenced a legally carried sheathed knife, despite no prohibition or warning regarding such possession. The harm included emotional distress, additional judicial scrutiny, and the potential for incarceration based on protected conduct. These actions violated Staples'

clearly established rights to procedural due process and political participation under the First and Fourteenth Amendments and Articles 8 and 14 of the New Hampshire Constitution.

109. On or about November 19, 2021, Plaintiff Staples was arrested by Defendant Trooper Gregory DeLuca without prior warning or dispersal order, following his constitutionally protected expressive statement: "Tyrants." This seizure occurred after Staples raised safety concerns regarding another citizen with a child in the hallway. He was zip-tied, arrested, and detained without any clear articulation of charges. The arrest led to further bail restrictions and emotional trauma. The shifting allegations used to justify prosecution—from "bootlickers" to "fuck around and find out"—demonstrated arbitrariness and pretext. These acts violated clearly established rights under the Fourth and Fourteenth Amendments and Articles 8, 14, and 22 of the New Hampshire Constitution.

110. The arrest, bail motions, and subsequent prosecutions against Staples were part of a pattern of retaliatory legal process abuse. At his arraignment, the State presented no charges, and no prosecutor appeared. Only after a delay did the State amend its accusations. Defendant O'Leary failed to appear for the final trial, and the case was dismissed with prejudice. These actions reflect misuse of the legal system to chill speech and punish civic participation. The harm included reputational damage, lost time, legal uncertainty, and fear of future retaliation. This conduct constitutes abuse of process actionable under both federal and New Hampshire law.

110A. These due process violations align with those described in Domenico v. Town of Newfields, where plaintiffs alleged systemic denial of notice, inconsistent charging, and prejudicial bail impositions arising from peaceful protest activity. In both cases, authorities misused procedural tools to stigmatize civic participants and suppress dissent. Plaintiffs Staples and Bussiere were denied fair process and subjected to fabricated or shifting accusations without evidentiary support, violating their rights under the Fourteenth Amendment and Article 14 of the New Hampshire Constitution.

110B. Defendants have claimed that prosecutorial and bail decisions were lawful exercises of discretion. However, Plaintiffs allege these legal tools were weaponized with retaliatory intent. The record shows arrests without probable cause, motions unsupported by law, and trials manipulated to burden dissenters. Where state actors invoke judicial mechanisms for an improper motive—namely, to silence protected expression and penalize participation—such conduct constitutes actionable abuse of process and due process deprivation under Loudermill, Mathews v. Eldridge, and analogous New Hampshire legal principles.

111. Defendants further manipulated court processes by (a) scheduling Staples' two criminal trials—relating to his October 13 and November 19 arrests—for the same time, date, and courtroom; (b) introducing video from unrelated events to prejudice the court; and (c) filing waiver of service forms that Plaintiffs never signed or authorized. These actions obstructed fair access to judicial proceedings and distorted the adversarial process, resulting in tangible harm including unnecessary legal expenses, reputational damage, and further deterrence from civic

engagement. These facts support claims under the Fourteenth Amendment and state-law theories of procedural abuse.

111A. Staples' November 19, 2021 prosecution involved a shifting factual narrative and fabricated quote, initially accusing him of saying "bootlickers" and later "fuck around and find out." These conflicting theories reflect arbitrary legal manipulation. The prosecutor, Charles O'Leary, failed to appear at trial and offered no evidence, further confirming the absence of a legitimate prosecutorial motive and constituting abuse of process.

112. These actions constitute classic abuse of process under New Hampshire common law and actionable due process violations under federal constitutional standards. Specifically, Defendants—including Charles O'Leary and John Doe prosecutors—used legal mechanisms such as bail proceedings, trial scheduling, and evidentiary manipulation not to achieve justice, but to harass and silence Plaintiffs for their public dissent. The improper use of judicial resources and processes resulted in economic harm, emotional distress, reputational damage, and a chilling effect on future political participation. Such conduct, when undertaken under color of state law, violates the Fourteenth Amendment and Article 14 of the New Hampshire Constitution and gives rise to a § 1983 cause of action.

113. As a direct result of Defendants' abuse of process and denial of due process, Plaintiffs Frank Staples and Kathleen Bussiere were deprived of their liberty, subjected to baseless legal proceedings, excluded from civic engagement, and forced to bear the emotional toll of public defamation and legal harassment. Staples endured repeated courtroom appearances on charges that were later abandoned or dismissed, while Bussiere was publicly labeled a threat without justification or recourse. These injuries stemmed from unlawful actions that violated their clearly established rights under the Fourteenth Amendment to the United States Constitution and Articles 14 and 15 of the New Hampshire Constitution.

114. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, including judicial findings that the bail conditions imposed upon them and the related criminal prosecutions were unconstitutional as applied. Specifically, Plaintiffs request declarations that (a) the bail restrictions lacked individualized findings, were not narrowly tailored, and violated clearly established due process and First Amendment rights; (b) the prosecutions were initiated and maintained without probable cause and for retaliatory purposes; and (c) Defendants misused legal mechanisms—including bail revocation motions, trial scheduling, and evidentiary manipulation—for the improper purpose of punishing Plaintiffs' speech and civic engagement. Plaintiffs further seek injunctive relief prohibiting future retaliatory legal actions, including the imposition of bail conditions or criminal charges based on protected expressive conduct. In addition, Plaintiffs seek compensatory damages for economic losses, reputational injury, and emotional distress directly caused by the unconstitutional conduct of Defendants, punitive damages to deter future abuse of governmental authority, and an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

114A. Plaintiffs further assert that the imposition of sweeping and vague bail conditions—such as "no contact with any public official" or prohibitions on attending public meetings—constituted prior restraints and viewpoint-based restrictions on core political speech, in violation of the First Amendment. These conditions were imposed without any specific findings that Plaintiffs posed a threat to any individual or public safety, and in the absence of any evidentiary basis demonstrating necessity. Defendants John Doe Prosecutors and John Doe Judges, acting under color of state law, knowingly approved and enforced these unconstitutional restrictions with the intent and effect of chilling Plaintiffs' participation in public discourse. The challenged conditions directly interfered with Plaintiffs' rights to petition the government, engage in political expression, and associate with fellow citizens to express dissent—all rights that are clearly established under longstanding First Amendment jurisprudence. As such, Defendants are not entitled to qualified immunity.

114B. Defendant John Doe Prosecutors, in conjunction with the Newfields Police Department and certain State Police personnel, further sought bail revocation based on Plaintiffs' continued exercise of protected speech—namely, attending public forums and speaking critically of state policies. These revocation efforts were not grounded in any new criminal conduct, threat, or violation of law, but were premised solely on Plaintiffs' constitutionally protected political expression. The misuse of judicial processes to deter and punish dissent violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights, including the rights to due process, free expression, and freedom from unreasonable seizure. The retaliatory nature of these actions is further evidenced by the selective enforcement against Plaintiffs and the absence of similar prosecutions or conditions imposed on individuals expressing contrary political viewpoints. The pattern and timing of these efforts demonstrate a concerted scheme to silence dissent rather than protect legitimate governmental interests.

114C. Plaintiff Frank Staples specifically alleges that the bail conditions imposed on him following his politically charged arrest included a prohibition on attending Executive Council meetings—a direct infringement on his right to petition government officials and participate in public oversight. This restriction was imposed without evidentiary justification or any finding that Mr. Staples posed a threat to public safety or order. Defendant John Doe Prosecutors and John Doe Judicial Officers conspired to maintain this prohibition despite repeated objections, effectively barring Mr. Staples from engaging in core political expression at a critical time. These actions deprived him of equal access to public fora and constituted a viewpoint-discriminatory restriction on speech, targeting his political stance against pandemic-related mandates and executive overreach. Such restrictions violated the First and Fourteenth Amendments and were implemented with deliberate indifference to clearly established constitutional rights.

114D. Plaintiff Kathleen Bussiere similarly faced unconstitutional bail restrictions, including vague mandates to avoid "any disruptive conduct" at public meetings and prohibitions on "contact with public officials," without any specific allegations of threats or misconduct. These conditions were imposed solely in response to her vocal criticisms of state policies during public forums. At no point was there a judicial finding that Ms. Bussiere posed a risk warranting such sweeping limitations. The enforcement of these conditions by Defendant John Doe Prosecutors

and approved by John Doe Judicial Officers amounted to a de facto ban on her public participation and political expression. These actions, undertaken under color of law, targeted Ms. Bussiere based on the content of her speech and her association with other dissenters, thereby violating her First Amendment rights and Fourteenth Amendment guarantees of equal protection and due process.

114E. The restrictions imposed on both Plaintiffs were not only unconstitutional on their face, but also enforced in an arbitrary and discriminatory manner. While other individuals engaged in similar or more disruptive behavior at public meetings were not subjected to arrest or speech-based bail conditions, Plaintiffs were singled out due to their opposition to Executive Branch policies. This selective enforcement—driven by animus toward Plaintiffs' viewpoints—constitutes impermissible content and viewpoint discrimination under the First Amendment. Moreover, the arbitrary application of these conditions without procedural safeguards violated Plaintiffs' rights to due process under the Fourteenth Amendment. The unequal treatment of dissenters as compared to those who supported government policies further establishes a retaliatory and discriminatory motive by Defendants, defeating any assertion of qualified immunity.

### Count IV: Conspiracy to Interfere with Civil Rights – 42 U.S.C. § 1985(3)

115. Defendants John Doe Prosecutors, John Doe State Police Officers, Charles O'Leary, and other named and unnamed co-conspirators, acting under color of state law and in concert with one another, engaged in a knowing and purposeful conspiracy to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3). This conspiracy was motivated by invidious discrimination and animus toward Plaintiffs' political viewpoints and affiliations, specifically their opposition to COVID-19 executive policies, mask mandates, and public health restrictions. Defendants conspired to silence, intimidate, and punish Plaintiffs for their protected political speech by coordinating retaliatory arrests, orchestrating abusive bail conditions, initiating meritless prosecutions, and disseminating false and defamatory information to government agencies and media outlets. The acts taken in furtherance of this conspiracy were not isolated or accidental, but part of a coordinated plan to suppress political dissent and chill public participation in civic life.

116. In furtherance of the conspiracy, Defendants engaged in overt acts that included: (a) initiating baseless criminal complaints against Plaintiffs without probable cause; (b) requesting and enforcing unconstitutional bail conditions designed to prevent Plaintiffs from attending public meetings or speaking to government officials; (c) coordinating with local police departments to surveil Plaintiffs' protected activities; and (d) disseminating misleading or false information to other government entities to justify punitive action. These acts were taken with knowledge that Plaintiffs had engaged in constitutionally protected political speech and assembly, and with the specific intent to deter and penalize such expression. Defendants' concerted actions were not only unlawful under § 1985(3), but also violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments, including the rights to free speech, due process, and equal protection.

117. The conspiracy was effectuated through both formal and informal channels of communication and collaboration among the Defendants, including internal emails, off-the-record discussions, and coordinated responses to Plaintiffs' public advocacy. The Defendants shared a common objective: to suppress dissent and punish political opposition under the guise of law enforcement and public order. This objective was carried out across multiple branches and agencies, including law enforcement, prosecutorial offices, and administrative bodies, demonstrating a pattern of coordinated state action. The timing, similarity, and escalation of adverse actions against Plaintiffs following their public statements and participation in protests further support the inference of an agreement among Defendants to violate Plaintiffs' civil rights.

118. Plaintiffs were injured as a direct and foreseeable result of this unlawful conspiracy. They suffered deprivations of their constitutional rights, including being subjected to false arrest, malicious prosecution, and viewpoint-based censorship. Additionally, Plaintiffs endured reputational harm, emotional distress, economic loss, and a chilling effect on their future participation in civic and political activities. These injuries were not incidental but were the intended consequence of Defendants' coordinated efforts to retaliate against Plaintiffs' protected speech and political advocacy. The pattern of conduct and the consistency of retaliatory actions across multiple incidents and actors underscore the deliberate nature of the conspiracy and its targeted impact on Plaintiffs.

119. Defendants' conduct meets the requirements of a § 1985(3) claim because it was driven by discriminatory animus toward a specific class—namely, individuals opposing state executive actions and mandates—who were targeted for their political viewpoint and exercise of First Amendment rights. Plaintiffs were subjected to unequal treatment compared to similarly situated individuals who supported government policies or remained silent. This discrimination manifested in arrests, bail conditions, and prosecutorial decisions that would not have been applied to others outside the disfavored class. The Defendants' conduct violated clearly established constitutional principles and federal statutory protections, and they acted with the requisite intent to deprive Plaintiffs of equal protection and equal privileges under the law.

120. Plaintiffs therefore seek all remedies available under 42 U.S.C. § 1985(3), including compensatory damages for actual harm, punitive damages against individual Defendants for their willful and malicious conduct, and injunctive and declaratory relief to prevent future conspiracies to suppress political dissent. Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The scope and coordination of Defendants' conspiracy demand judicial recognition that such conduct violates fundamental constitutional protections and statutory civil rights, warranting robust relief and deterrence.

121. Defendants—including Sununu, O'Leary, Formella, DeLuca, and Newfields and State Police—acted in coordination through a pattern of overt acts including:

a) Political surveillance and intelligence gathering targeting protected activity;

b) Public statements branding dissenters as "anti-vaxxers," "agitators," and "public threats";

c) Use of unrelated footage in prosecutions to mislead courts and chill speech;

d) Filing retaliatory bail motions and imposing speech-restrictive conditions;

e) Selective arrests without probable cause at meetings and public forums;

f) Strategic mischarging and shifting narratives (e.g., "bootlickers" to "fuck around and find out") to sustain false prosecutions;

g) Collusion with media outlets to frame Plaintiffs as dangerous and destabilizing elements;

h) Orchestrating parallel enforcement patterns, as reflected in Todd v. Sununu, where plaintiffs were arrested during the same Executive Council meeting despite engaging in indistinguishable expressive conduct. That case identifies Governor Sununu, the State Police, and unnamed agents as co-conspirators operating under color of law to suppress dissident speech through unlawful arrests and excessive bail conditions.

121A. The retaliatory arrest on November 19 was carried out by the same officer (DeLuca) involved in Staples' October 13 arrest. This continuity underscores a coordinated enforcement pattern. The later attempt to revive dismissed charges via a motion for reconsideration shows ongoing state-level coordination to punish political dissent.

122. The conspiracy was motivated by viewpoint-based animus and political discrimination. Plaintiffs were treated differently from other attendees, not because of conduct, but because of identity, speech, and association with protected political activity.

123. These coordinated acts resulted in constitutional injuries, including unlawful arrest, suppression of speech, reputational destruction, emotional trauma, and exclusion from public life. The acts also mirror those described in Todd v. Sununu, which alleges a § 1985(3) conspiracy among many of the same officials, over the same October 13, 2021 meeting. The recurrence of identical enforcement tactics and adverse conditions across separate but related arrests—including those in Todd—further substantiates the existence of an inter-agency agreement to target political dissidents through coordinated, retaliatory means.

124. Plaintiffs seek a judicial finding that a § 1985(3) conspiracy existed, declaratory and injunctive relief to prevent future coordinated enforcement against political dissidents, compensatory and punitive damages, and attorneys' fees under 42 U.S.C. § 1988.

### Count V: Violations of the New Hampshire Constitution

*A. Summary of Conduct by Date, Defendant, Harm, and Constitutional Violation*

The following chart outlines key incidents referenced throughout this Complaint, identifying the responsible Defendant(s), the conduct in question, the specific harm suffered, and the constitutional rights violated:

   i. December 28, 2020: Defendant Kathleen O'Brien (via the Newfields Police) participated in surveillance and issued citations during a peaceful vigil. Harm: Citation without probable cause, reputational harm via Governor Sununu's statements. Violation: First & Fourth Amendments; NH Const. Art. 8, 15, 22, 32.

   ii. January 31, 2021: Defendant(s) Newfields PD, unknown officers. Staples arrested after requesting officer ID. Harm: Retaliatory arrest, punitive bail. Violation: First, Fourth Amendments; NH Const. Art. 8, 15, 22, 32.

   iii. September 29, 2021: Governor Sununu and AG Formella made defamatory statements following peaceful protest at Executive Council. Harm: Reputational injury, stigmatization. Violation: First, Fourteenth Amendments; NH Const. Art. 8, 22.

   iv. October 13, 2021: Defendants Sununu, Formella, DeLuca, Walsh, and unknown officers arrested Plaintiffs without warning. Harm: Excessive force (Bussiere), retaliatory arrest, emotional trauma, concussion. Violation: First, Fourth, Fourteenth Amendments; NH Const. Art. 2, 8, 10, 15, 32.

   v. November 8, 2021: Defendant O'Leary filed a retaliatory motion to revoke Staples' bail based on lawful testimony. Harm: Emotional harm, prior restraint. Violation: First, Fifth, Fourteenth Amendments; NH Const. Art. 8, 32.

   vi. November 19, 2021: Defendant DeLuca arrested Staples following his exclamation ("Tyrants!"). No charges presented at arraignment. Harm: False arrest, deprivation of liberty. Violation: First, Fourth Amendments; NH Const. Art. 8, 22.

125. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein. The factual conduct described above—including the unlawful arrests, excessive bail conditions, retaliatory prosecutions, suppression of speech, targeted surveillance, and exclusion from public forums—also violated Plaintiffs' rights under the Constitution of the State of New Hampshire. These violations, committed under color of state law by the named and Doe Defendants, infringed upon Plaintiffs' natural rights, due process rights, rights of assembly, free speech, equal protection, and the right to hold government accountable, as guaranteed by multiple Articles of Part I of the New Hampshire Constitution. Plaintiffs seek declaratory, injunctive, and compensatory relief for these state constitutional violations, which are independently actionable under the common law of New Hampshire and supported by long-standing precedent recognizing individual enforcement of rights under Part I.

126. Defendants' actions violated Article 2 of the New Hampshire Constitution, which guarantees all persons the natural, essential, and inherent rights to enjoy and defend life and liberty, to acquire and protect property, and to seek and obtain happiness. Plaintiffs were denied these fundamental rights through unlawful arrests, coercive bail restrictions, and retaliatory prosecutions that interfered with their liberty, livelihood, and personal autonomy. These deprivations were not justified by legitimate governmental interests, were not narrowly tailored, and were executed in a manner inconsistent with New Hampshire's commitment to individual liberty and government by consent. The harm to Plaintiffs' dignity, autonomy, and participation in civil society constitutes a direct violation of the natural rights secured by Article 2.

127. Defendants violated Article 2-b of the New Hampshire Constitution, which guarantees the right of privacy. Plaintiffs were subjected to targeted surveillance, information gathering, and law enforcement scrutiny not based on any criminal conduct but solely due to their political expression and association. Law enforcement and prosecutorial officials monitored Plaintiffs' attendance at public meetings, reviewed their public speech, and maintained records of their civic activity—all without a warrant, judicial oversight, or individualized suspicion. These acts intruded upon Plaintiffs' personal autonomy and private associations and chilled their exercise of constitutionally protected freedoms. Such conduct, undertaken by agents of the state for retaliatory and discriminatory purposes, constitutes a violation of the right to privacy as guaranteed by Article 2-b.

   a) Article 2 – Natural Rights: Plaintiffs were deprived of liberty, reputation, and access to public participation without justification, in violation of their natural right to defend and enjoy life and liberty.

   b) Article 2-b – Right of Privacy: Defendants intruded on Plaintiffs' private political organizing and expressive associations, including surveillance of Zoom meetings and tracking of peaceful civic planning.

   c) Article 8 – Accountability of Magistrates and Officers: Plaintiffs were excluded from governmental proceedings, arrested without cause at public meetings, and subjected to sealed legal manipulation—undermining public accountability and access.

   d) Article 10 – Right of Revolution: The actions of Plaintiffs, including peaceful assembly, dissent, and civic protest, were in direct furtherance of their constitutional obligation to confront perversions of public liberty. Article 10 affirms that when governmental actions endanger liberty and lawful remedies are denied or obstructed, the people "may, and of right ought to reform the old." Plaintiffs' peaceful conduct was constitutionally grounded, and Defendants' retaliation for exercising these rights violated the spirit and intent of this provision.

   e) Article 14 – Legal Remedies to be Free, Complete, and Prompt: Plaintiffs were deprived of timely and meaningful access to justice through procedural gamesmanship, trial delays, and improper filings. Defendants used legal mechanisms not to secure justice, but to obstruct

it—violating the State Constitution's guarantee of prompt and complete remedies for all injuries to person or reputation.

f) Article 15 – Rights of the Accused: Defendants arrested Plaintiffs without probable cause, failed to plainly or formally describe the alleged offenses at the time of arraignment, and fabricated or shifted allegations in criminal filings. These acts deprived Plaintiffs of the protections due to all subjects accused of offenses, including notice of charges, the right to be heard, and due process "by the law of the land."

g) Article 19 – Searches and Seizures: Plaintiffs were seized and detained without lawful orders, probable cause, or legitimate law enforcement purpose.

h) Article 22 – Free Speech and Liberty of the Press: Plaintiffs were arrested for expressive conduct, targeted for media statements, and punished for civic participation, in violation of their right to free speech and a free press, which are "inviolably preserved" under this provision.

i) Article 32 – Right to Assemble and Petition: Plaintiffs were excluded from public meetings, arrested at public comment sessions, and denied the right to request redress through lawful assembly.

j) Article 33 – Excessive Bail: Plaintiffs were subjected to vague and speech-restrictive bail terms that bore no relationship to public safety or judicial appearance. (*See also Todd v. Sununu, Complaint ¶¶ 49–50, where plaintiffs were subjected to similar speech-restrictive bail conditions without any finding of dangerousness or necessity. These overlapping facts further confirm the excessive and punitive nature of bail practices challenged herein.)

k) Article 8 – Plaintiffs were excluded from governmental proceedings and denied public access despite the state's own representations that the Executive Council welcomes public input. In Todd v. Sununu, this exclusion was enforced via roped-off podiums and selective speaker approvals—an unconstitutional restriction echoed in Plaintiffs' experience.

128. Defendants further violated Article 8 of the New Hampshire Constitution, which provides that all magistrates and officers of government are accountable to the people, and that government must be open, accessible, and responsive. Instead of upholding this principle, Defendants acted to shield government processes from public scrutiny by excluding Plaintiffs from public meetings, imposing unconstitutional conditions on access to civic forums, and retaliating against Plaintiffs for their attempts to engage with state officials. These actions undermined public accountability and created an atmosphere of fear and exclusion for dissenting voices. By targeting Plaintiffs for expressing lawful criticism and seeking government redress, Defendants obstructed the transparency and civic engagement that Article 8 is designed to protect.

129. Defendants' conduct also violated Article 22 of the New Hampshire Constitution, which guarantees the right of free speech and freedom of the press. Plaintiffs were arrested,

prosecuted, and subjected to restrictive bail conditions not for any unlawful conduct, but for exercising their right to speak at public meetings, protest government policies, and criticize public officials. Defendants imposed speech-based restrictions, including conditions barring Plaintiffs from attending Executive Council meetings or contacting elected officials, with the intent and effect of suppressing disfavored viewpoints. Such actions constitute impermissible prior restraints and viewpoint discrimination, striking at the core of Article 22's protection of political expression and civic dissent.

130. Defendants violated Article 32 of the New Hampshire Constitution, which protects the right of the people to assemble in a peaceable manner and to instruct their representatives. Plaintiffs were arrested, surveilled, and silenced precisely because they exercised this right by attending public meetings, organizing protests, and expressing their views to elected officials. The imposition of bail conditions barring attendance at public governmental sessions and prohibiting "contact with officials" was a direct infringement on the right to assemble and petition. These restrictions were neither content-neutral nor narrowly tailored to serve a compelling interest; rather, they were imposed to deter dissent and exclude Plaintiffs from participating in the democratic process. Defendants' actions thus directly contravened the civic freedoms secured by Article 32.

130A. Plaintiffs seek declaratory relief confirming that the foregoing actions violated the enumerated provisions of the New Hampshire Constitution. Plaintiffs further seek compensatory damages under the common law for the harms caused by these violations, including emotional distress, reputational damage, and loss of liberty and civic participation. Plaintiffs also request equitable relief, including expungement of records and a judicial declaration that the bail restrictions, arrests, and prosecutions undertaken against them were unconstitutional under state law. These remedies are necessary to vindicate Plaintiffs' rights and to deter future abuses of governmental power against political dissenters in New Hampshire.

### COUNT VI: State Tort Claims under New Hampshire Common Law

131. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein. This Count asserts claims under New Hampshire common law for intentional torts committed by Defendants acting under color of law but outside the scope of lawful authority. The misconduct described—unlawful arrests, baseless prosecutions, public defamation, surveillance, and infliction of emotional distress—was undertaken with malice, retaliation, or reckless disregard for Plaintiffs' rights. These claims are actionable under the common law of New Hampshire and are not subject to statutory immunity under RSA 507-B:5, which excludes coverage for intentional torts and bad faith conduct by public officials.

132. Under New Hampshire law, Plaintiffs have a right to be free from unlawful detention, reputational harm, and intentional infliction of severe emotional distress caused by malicious or reckless governmental conduct. The acts described herein constitute multiple torts under

well-established common law principles, including false arrest, false imprisonment, malicious prosecution, defamation, false light invasion of privacy, and intentional infliction of emotional distress. Each of these torts arises from conduct that exceeded the lawful scope of Defendants' official duties and was undertaken in bad faith or with deliberate indifference to Plaintiffs' civil rights.

A. False Arrest and False Imprisonment

133. Defendants Charles O'Leary, John Doe State Police Officers, and John Doe Municipal Officers arrested Plaintiffs without lawful justification, without probable cause, and without a valid warrant. These arrests were initiated not in response to any criminal conduct, but as a means of retaliating against Plaintiffs' political speech and public dissent. The arrests were effectuated with full knowledge that Plaintiffs' conduct was protected under the First Amendment and did not meet any legitimate threshold for criminal liability. As such, they constitute false arrest under New Hampshire common law.

- January 31, 2021 (Staples – Caroling arrest),

- October 13, 2021 (Staples and Bussiere – Executive Council arrests),

- November 19, 2021 (Staples – Fiscal Committee protest).

134. As a direct result of these unlawful arrests, Plaintiffs were detained, confined, and subjected to judicial control under coercive and punitive bail conditions, all without legal cause. The duration and terms of their confinement—including restrictions on movement, speech, and assembly—amounted to false imprisonment under New Hampshire law. Plaintiffs' liberty was restrained through intentional actions by Defendants, undertaken without consent, lawful justification, or due process of law.

135. The false arrest and imprisonment of Plaintiffs caused significant harm, including loss of liberty, reputational damage, emotional distress, and financial hardship. These tortious acts were undertaken with actual malice or reckless disregard for Plaintiffs' rights and were not incident to any good-faith law enforcement purpose. Accordingly, Defendants are liable under New Hampshire law for all damages proximately caused by their unlawful conduct.

B. Malicious Prosecution

136. Defendants, including John Doe Prosecutors and law enforcement officers acting in concert, initiated and pursued criminal charges against Plaintiffs without probable cause and with an improper purpose. These prosecutions were not supported by credible evidence and were pursued in retaliation for Plaintiffs' public criticism of government policies and participation in protected political expression. The prosecutions were not initiated in good faith, but rather as a means to harass, silence, and discredit Plaintiffs in the public eye.

137. The criminal proceedings initiated against Plaintiffs ultimately terminated in their favor, with charges dismissed or otherwise resolved without conviction. These outcomes confirm the absence of probable cause and support the inference of malice and retaliatory motive. As a result of Defendants' wrongful use of the judicial process, Plaintiffs suffered reputational harm, emotional distress, financial burdens, and an unconstitutional chilling of their political expression. Defendants are therefore liable under New Hampshire law for malicious prosecution.

C. Abuse of Process

138. Defendants, including Charles O'Leary and John Doe Prosecutors, abused the legal process by using judicial mechanisms—such as bail motions, trial scheduling, and evidentiary filings—not to adjudicate criminal charges in good faith, but to harass Plaintiffs, chill their speech, and deter further civic engagement. For example, Defendants scheduled multiple trials for the same time and courtroom, introduced irrelevant protest footage to prejudice proceedings, and filed unauthorized waivers of service. These acts constituted a misuse of legitimate legal process for an improper purpose, namely to punish Plaintiffs for their constitutionally protected speech and political association. This constitutes abuse of process under New Hampshire common law.

  - Retaliatory bail conditions with no public safety basis,

  - Trial scheduling manipulations (two trials at once),

  - Introduction of unrelated protest video to bias outcomes,

  - Filing waivers of service without Plaintiffs' consent.

139. The improper use of legal process by Defendants caused Plaintiffs to suffer ongoing emotional, reputational, and financial harm, including the imposition of stress-inducing and baseless court obligations, the public perception of criminality, and the forced diversion of time and resources to defend against retaliatory proceedings. The process was not used to pursue justice, but rather as a tool of political suppression and intimidation. These acts were intentional, malicious, and undertaken with knowledge that the charges and procedural maneuvers lacked merit or proportionality.

D. Defamation

140. Defendants, including John Doe Prosecutors and law enforcement officials, made or caused to be made false and defamatory statements about Plaintiffs, both orally and in writing, to members of the media, government agencies, and the public. These statements included unsubstantiated allegations that Plaintiffs were dangerous, extremist, or criminally disruptive individuals, and were made with knowledge of their falsity or with reckless disregard for the truth. Such statements were not limited to the content of any official charging documents, but

extended to extrajudicial communications intended to damage Plaintiffs' reputations and isolate them from their communities.

141. These defamatory statements were not protected by any form of absolute or qualified privilege because they were not made in the course of legitimate governmental duties, nor were they confined to judicial or legislative proceedings. Instead, the statements were disseminated to third parties without legal necessity and with the intent to harm. As a direct result, Plaintiffs suffered reputational injury, social ostracism, professional harm, and emotional distress. Defendants are therefore liable under New Hampshire common law for defamation per se, as the statements falsely imputed criminal behavior and moral turpitude.

E. Invasion of Privacy

142. Defendants also committed the common law tort of invasion of privacy by wrongfully publicizing private facts about Plaintiffs, engaging in targeted surveillance, and portraying Plaintiffs in a false light. These actions were not related to any legitimate law enforcement objective and were instead designed to embarrass, harass, and discredit Plaintiffs for engaging in political speech. Defendants exploited their official positions to gather and disclose personal information that was not publicly known, not of legitimate public concern, and not relevant to any lawful investigation or prosecution.

143. Plaintiffs were placed in a false light before the public by Defendants' dissemination of misleading narratives suggesting that Plaintiffs were dangerous, unlawful, or mentally unstable. These portrayals were knowingly inaccurate and designed to generate public hostility, alienation, and reputational damage. Such conduct constitutes false light invasion of privacy under New Hampshire law and was undertaken with actual malice or reckless disregard for the truth. Plaintiffs suffered emotional harm and stigmatization as a result of these invasions.

F. Intentional Infliction of Emotional Distress (IIED)

144. Defendants' collective conduct—targeting Plaintiffs for arrest, prosecution, public shaming, and exclusion from civic life solely because of their political speech—was extreme, outrageous, and beyond the bounds of decency in a civilized society. These actions were not isolated incidents, but part of a sustained campaign of retaliation and psychological coercion. Defendants acted intentionally or with reckless disregard for the probability that their conduct would cause severe emotional distress to Plaintiffs.

145. As a direct result of Defendants' conduct, Plaintiffs experienced substantial emotional suffering, including anxiety, sleeplessness, social withdrawal, loss of trust in public institutions, and fear of further retaliation. These harms were foreseeable and intended outcomes of Defendants' deliberate efforts to silence and punish Plaintiffs for exercising their constitutional rights. The emotional distress suffered by Plaintiffs was severe, enduring, and directly traceable to Defendants' unlawful actions.

146. Defendants' conduct constitutes intentional infliction of emotional distress under New Hampshire common law. The pattern of misconduct—spanning arrests, prosecutions, surveillance, and public defamation—was designed to cause maximum reputational and emotional harm. Plaintiffs seek compensatory damages for these injuries, including treatment costs, pain and suffering, and the impact on their personal and professional lives. Plaintiffs also seek punitive damages for the malicious, willful, and oppressive nature of Defendants' conduct.

G. Relief on State Tort Claims

147. Plaintiffs seek all damages recoverable under New Hampshire common law for the torts alleged in this Count, including but not limited to compensation for emotional distress, reputational injury, loss of liberty, loss of income and opportunities, legal expenses incurred in defending against meritless prosecutions, and related harms. These damages are the direct and foreseeable consequence of Defendants' unlawful and tortious acts.

148. Plaintiffs further seek punitive damages against individual Defendants whose conduct was willful, malicious, oppressive, or undertaken in reckless disregard of Plaintiffs' rights. Such damages are warranted under New Hampshire law to punish egregious misconduct and to deter similar abuses of power by public officials in the future. The coordinated nature of Defendants' actions, and their targeting of protected speech, supports an award of exemplary damages.

149. Plaintiffs expressly preserve all claims and remedies available under New Hampshire common law, including equitable relief where appropriate. Plaintiffs also reserve the right to amend their claims as additional facts become known through discovery. No immunity under RSA 507-B:5 or any other provision of state law applies to the intentional and bad faith conduct alleged herein.

**Thanks for your patience — I've completed a detailed comparison between your original Prayer for Relief and the new draft, and here are the results, with recommendations for integrating the best elements of both.**

**---**

**Comparison Summary: Original vs. New Prayer for Relief**

**Key Strengths of the Original**

**Narrative power: Emphasizes "pattern and practice," chilling effect, and systemic misuse of state power.**

**Granular relief: Includes nuanced remedies like training mandates, policy review, Monell findings.**

**Stigma-plus claim: Includes a Paul v. Davis theory under due process.**

**Nominal damages and declaratory findings on immunity: These preserve legal claims regardless of compensatory damage awards.**

**Strengths of the New Draft**

**Clarity and organization: Logically grouped categories (declaratory, injunctive, compensatory, punitive).**

**Federal pleading standards: Clean alignment with FRCP 8(a), 12(b)(6), and Rule 57.**

**Explicit constitutional/statutory anchors: Each relief item ties directly to the First, Fourth, Fourteenth Amendments, § 1983, § 1985, and the NH Constitution.**

**Ready for copy/paste with formatting ease.**

**---**

**Recommended Composite Final Version**

**Below is the best-of-both-worlds merged Prayer for Relief, preserving your powerful original relief structure, expanded with federal pleadings precision, and formatted for clarity:**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs and against all Defendants on all counts set forth in this First Amended Complaint;

B. Declare that Defendants' conduct—including coordinated surveillance of lawful activity, arrests without probable cause, abuse of bail and court procedures, retaliatory prosecution, and defamatory public statements—violated Plaintiffs' rights under:

The First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

42 U.S.C. §§ 1983 and 1985(3);

The New Hampshire Constitution, including Articles 2, 2-a, 2-b, 8, 10, 14, 15, 19, 22, 32, and 33;

C. Declare that the cumulative effect of these actions constituted a pattern and practice of viewpoint discrimination and political retaliation, actionable under both federal and state law;

D. Issue permanent injunctive relief prohibiting Defendants, their successors, and all those acting in concert from:

1. Retaliating against Plaintiffs or similarly situated individuals for engaging in protected political speech;

2. Imposing exclusionary bail or probation conditions targeting political association, digital expression, or physical presence near government institutions;

3. Using government resources to monitor, infiltrate, or disrupt lawful civic activity;

4. Misusing judicial process—including court filings, scheduling, and discretionary charges—as a tool of retaliation or suppression;

E. Order the expungement and sealing of all:

1. Arrest records, citations, bail conditions, and court documents associated with the enforcement actions described;

2. Surveillance records, memoranda, or files related to Plaintiffs' expressive or associative activity;

3. Public records or databases labeling Plaintiffs as dangerous, extremist, or criminal without basis;

F. Order structural relief to ensure constitutional compliance, including:

1. Standing review policies for protest-related arrests and prosecutions;

2. Training for law enforcement and prosecutors on First and Fourth Amendment protections in public protest contexts;

3. Written protocols to prevent retaliatory bail and charging decisions;

4. A declaratory finding that the Town of Newfields, its police department, and the New Hampshire State Police engaged in a pattern of viewpoint-based enforcement against Plaintiffs and others, warranting Monell-based liability and reform;

G. Award Plaintiffs:

1. Compensatory damages for emotional distress, reputational injury, physical harm, economic losses, and denial of liberty and civic participation;

2. Punitive damages against individual Defendants whose conduct was malicious, oppressive, or undertaken with reckless disregard of constitutional rights;

3. Nominal damages to vindicate rights where compensatory damages may be inadequate or difficult to quantify;

H. Award attorneys' fees and costs under 42 U.S.C. § 1988 and applicable New Hampshire law, including expert fees and pro se expenses to the extent allowed;

I. Grant declaratory relief under 28 U.S.C. §§ 2201–2202, affirming that:

1. The bail restrictions, prosecutions, surveillance, and anti-picketing ordinance violated clearly established constitutional rights;

2. Defendants' coordinated messaging and public stigmatization created a "stigma-plus" deprivation of liberty and reputation without due process, in violation of Paul v. Davis, 424 U.S. 693 (1976);

J. Retain jurisdiction to monitor compliance with prospective relief and enforce structural reforms;

K. Grant any other legal, declaratory, or equitable relief the Court deems just and proper, including:

Relief consistent with Article 10 of the New Hampshire Constitution, affirming the people's right to reform government where peaceful redress has been obstructed;

A declaratory finding that the allegations, if proven, overcome qualified immunity at the pleading stage and that discovery is necessary to resolve disputed issues of motive, surveillance, and selective enforcement.

Respectfully submitted,

/s/ Frank Staples (Electronic Signature)
332 Merrimack Street
Manchester, NH 03103
(603) 722-5408
Absolutedefiance@protonmail.com

/s/ Kathleen Bussiere (Electronic Signature)
178 S. Main Street, Apt 3
Newton, NH 03858
(603) 770-2015
kaffatina@yahoo.com

Dated: April 10th, 2025

---

CERTIFICATE OF SERVICE

I hereby certify that on April 10th, 2025, a true and correct copy of the foregoing First Amended Complaint was filed in the late night drop box and then filed electronically by the United States

District Court Clerk for the District of New Hampshire, which will send notification of such filing to all counsel of record via the CM/ECF system. If any party is not registered with the CM/ECF system, a copy will be served by U.S. Mail or in another manner consistent with Fed. R. Civ. P. 5(b) and Local Rule 5.1(d).

/s/ Frank Staples (Electronic Signature)
332 Merrimack Street
Manchester, NH 03103
(603) 722-5408
Absolutedefiance@protonmail.com

/s/ Kathleen Bussiere (Electronic Signature)
178 S. Main Street, Apt 3
Newton, NH 03858
(603) 770-2015
kaffatina@yahoo.com

Dated: April 10th, 2025