# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

```
*************************************
Frank Staples, et al.,                    *
                                          *
                Plaintiffs,               *
        v.                                *        Civil No. 1:24-cv-00331-LM-TSM
                                          *
Christopher Sununu, Governor, et al.,     *
                                          *
                Defendants.               *
                                          *
*************************************
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants, New Hampshire Governor Kelly Ayotte, New Hampshire former Governor Christopher Sununu, the New Hampshire Attorney General, and Charles O'Leary (collectively, the "defendants"),[1] by and through counsel, the New Hampshire Office of the Attorney General, submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint.

## BACKGROUND

The plaintiffs filed their initial complaint in this matter on October 11, 2024. After the original defendants filed motions to dismiss the initial complaint, the plaintiffs filed their First Amended Complaint. For purposes of this motion only, the facts as alleged in the First Amended Complaint are accepted as true. The plaintiffs bring numerous claims under both federal and

---

[1] In regards to state defendants, the State of New Hampshire, the New Hampshire State Police, Gregory DeLuca, and Megan Walsh have not yet been served. As such, they are not included in this motion. In regards to the State of New Hampshire, the First Amended Complaint states that it is "named as a party only to the extent permitted by law for prospective injunctive relief and under the doctrine of Ex parte Young for official capacity enforcement purposes. Claims for monetary damages are not sought against the State due to Eleventh Amendment immunity." (Amend. Compl. at ¶ 17.)

state law. The claims are listed in the table below, and the defendants have numbered each count in the order they appear in the First Amended Complaint for ease of reference.

| Federal | State |
|---|---|
| Count I: Retaliation for Protected Speech- First Amendment (42 U.S.C. § 1983) | Count V: Violations of the New Hampshire Constitution |
| Count II: Unlawful Seizure and Excessive Force- Fourth Amendment (42 U.S.C. § 1983) | Count VI: State Tort Claims under New Hampshire Common Law |
| Count III: Deprivation of Procedural Due Process and Abuse of Process- Fourteenth Amendment (42 U.S.C. § 1983) | |
| Count IV: Conspiracy to Interfere with Civil Rights- 42 U.S.C. § 1985(3) | |

Plaintiff Frank Staples ("Staples") is a New Hampshire resident and "civic journalist, political organizer, and co-founder of the civic media platform Absolute Defiance." (Amend. Compl. at ¶ 11.) Plaintiff Kathleen Bussiere ("Bussiere") is also a New Hampshire resident. (Amend. Compl. at ¶ 12.)

On December 28, 2020, Staples, through Absolute Defiance, organized a candlelight vigil in a public park near Governor Christopher Sununu's residence in Newfields, New Hampshire to "memorialize lives lost or affected by COVID-19 lockdown measures." (Amend. Compl. at ¶ 25.) "The vigil was announced via a *public* Zoom meeting," which Newfields Police Officer Kathleen O'Brien attended. (Amend. Compl. at ¶ 26 (emphasis added).)

When participants arrived at the vigil, "they encountered a pre-positioned and heavily armed police presence" that included "an unidentified plainclothes individual believed to be a masked State Trooper" as well as "several other New Hampshire State Police officers." (Amend. Compl. at ¶ 28.) Staples was "ultimately seized and arrested" by two Newfields Police officers after asking the "masked officer" to identify himself. (Amend. Compl. at ¶ 28.) According to the First Amended Complaint, no "comparable enforcement was taken against other gatherings near

the Governor's residence" and all "citations issued to Plaintiffs and other attendees from the December 28, 2020 vigil were adjudicated not guilty or dismissed." (Amend. Compl. at ¶¶ 30, 33.) Thereafter, Staples "became the subject of increased surveillance by both the Newfields Police Department and the New Hampshire State Police," including "monitoring of his online civic organizing and preemptive deployment of officers at future events he publicized." (Amend. Compl. at ¶ 33.)

On January 31, 2021, Staples participated in a "Christmas caroling event" again near Governor Sununu's residence in Newfields. (Amend. Compl. at ¶ 35.) The event was "intended as a symbolic act of civil disobedience to challenge the constitutionality of a recently enacted anti-picketing ordinance." (Amend. Compl. at ¶ 35.) At the event, attendees "sang traditional Christmas carols while maintaining peaceful demeanor, without signs, amplification, chanting, or obstruction of traffic or walkways." (Amend. Compl. at ¶ 36.) Law enforcement officers, including New Hampshire State Police, were "pre-positioned before any conduct occurred" at the caroling event. (Amend. Compl. at ¶ 37.) An officer "believed to be" from the Newfields Police Department "indicated that citations would be issued to those who remained" at the event. (Amend. Compl. at ¶ 39.) Staples relayed the officer's message to the group of attendees, and the group decided to remain. (Amend. Compl. at ¶ 39.) When the caroling ended, Staples asked the Newfields Police officers to issue citations to all the participants. (Amend. Compl. at ¶ 40.) Staples was the only one cited. (Amend. Compl. at ¶ 40.) Staples then repeatedly asked for the identification of a person he believed to be a masked, plainclothes State Trooper. (Amend. Compl. at ¶ 41.) Newfields police officers asked Staples to stop and warned him that he would be arrested if he did not stop. (Amend. Compl. at ¶ 41.) Staples did not stop and the Newfields police officers arrested him. (Amend. Compl. at ¶ 41.) Staples was then subjected to bail

3

conditions, "including a blanket prohibition on being within 1,000 feet of Governor Sununu or any location he 'may be.'" (Amend. Compl. at ¶ 43.)

On September 29, 2021, Staples attended a public Executive Council meeting at Saint Anselm College in Manchester. (Amend. Compl. at ¶ 46.) Hundreds of people attempted to attend the event, but "fire code restrictions were selectively enforced to exclude members of the general public, including known political dissidents, while lobbyists and pre-approved individuals were admitted." (Amend. Compl. at ¶ 47.) Staples arrived early at the event, but he was denied entry. (Amend. Compl. at ¶47.) During the event, Staples exclaimed, "You want to lock me in a FEMA camp? Then do it now! Lock me in a FEMA camp!" (Amend. Compl. at ¶ 48.) Some members of the crowd also began chanting, "Shut it down!" (Amend. Compl. at ¶ 49.) Staples was not "arrested, cited, or warned by any law enforcement officer during or after the September 29, 2021 Executive Council meeting." (Amend. Compl. at ¶50.) The plaintiffs allege that "governor Sununu and Attorney General Formella issued broad public statements falsely characterizing all attendees– including Plaintiffs– as 'threatening' and 'dangerous.'" (Amend. Compl. at ¶ 50.) Footage of the event was also later used at Staples's October 13th trial. (Amend. Compl. at ¶ 52.)

On October 13, 2021, Staples and Bussiere attended a public Executive Council meeting held at the New Hampshire Police Standards and Training Facility in Concord. (Amend. Compl. at ¶ 55.) The plaintiffs allege that the meeting was a continuation of the September 29th meeting, and that Governor Sununu and Attorney General Formella "orchestrated the location change and coordinated a preemptive enforcement strategy that included mass arrests." (Amend. Compl. at ¶ 55.) In particular, the plaintiffs allege that the location was "a tactical law enforcement training

facility guarded by over 80 officers, including sheriffs, state troopers, and tactical units" and that at least 10-15 "paddy wagons were pre-positioned behind a curtain." (Amend. Compl. at ¶ 56.)

In advance of the meeting, Governor Sununu allegedly made a public statement that "anyone who 'got out of line' would be 'removed or arrested.'" (Amend. Compl. at ¶ 57.) During the event, Staples allegedly "sat calmly in the audience with his hands resting on his cane" and made "no disruptive statements, gestures, or movements, and his demeanor was peaceful and non-threatening throughout." (Amend. Compl. at ¶ 58.) Staples was then "tapped on the shoulder by a uniformed officer and told, 'Come with us, we need to talk.'" (Amend. Compl. at ¶ 59.) He was then arrested for disorderly conduct. (Amend. Compl. at ¶ 59.)

Following Staples's arrest, two New Hampshire State Troopers "grabbed" Bussiere, "who was seated silently between two companions and had not spoken, moved, or disrupted the proceedings in any way," by both arms and "violently pulled her from her chair." (Amend. Compl. at ¶ 60.) Bussiere "struck her head on a hard surface and exhibited signs of concussion shortly thereafter." (Amend. Compl. at ¶ 60.) She was then placed in a New Hampshire State Police transport vehicle, "zip tied behind her back, and not secured by a seatbelt or harness." (Amend. Compl. at ¶ 60.) She was "violently jostled as the vehicle moved, causing her head to repeatedly strike the hard metal surface of the interior." (Amend. Compl. at ¶ 60.)

The plaintiffs claim that at the October 13th event, nine people were arrested "without warning or individualized probable cause" and that the majority, including Bussiere, "had engaged only in a silent symbolic protest." (Amend. Compl. at ¶ 61B.) Although "90% of the audience participated in the same gesture, arrests were limited to individuals perceived to be affiliated with dissenting groups or prior demonstrations." (Amend. Compl. at ¶ 61B.) However,

the plaintiffs allege that Bussiere "had no known association with any organization or event prior to October 13." (Amend. Compl. at ¶ 65A.)

Immediately prior to the October 13th arrests, the plaintiffs allege Governor Sununu was "visibly engaged in active text communication with law enforcement officials" and that Attorney General Formella approached the Governor and conferred "in a whisper." (Amend. Compl. at ¶ 63.) Minutes later, "law enforcement conducted a coordinated sweep targeting only certain individuals– those previously identified with civil dissent." (Amend. Compl. at ¶ 63.)

After their arrests, the plaintiffs were subjected to bail conditions. (Amend. Compl. at ¶ 64.) In particular, Staples was "barred from attending any future public Executive Council meetings and from being in proximity to the Governor or any Executive Councilor– without geographic or temporal limits." (Amend. Compl. at ¶ 64.)

On or about November 8, 2021, Staples "entered the New Hampshire State House to testify during a public hearing on proposed COVID-19 vaccine-related legislation." (Amend. Compl. at ¶ 67.) While in the building, Staples was carrying a "sheathed knife" and told a trooper, "You can arrest me if you want, but I'm here to testify," and "Let the Governor know I'm in the building." (Amend. Compl. at ¶ 67, 71.) Defendant O'Leary then filed a bail revocation motion, alleging that Staples's "speech and presence constituted a threat." (Amend. Compl. at ¶ 67.)

On November 18, 2021, Staples appeared for a bail revocation hearing, following which, Staples remained subject to the original bail conditions. (Amend. Compl. at ¶ 72.)

On November 19, 2021, Staples attended a public Fiscal Committee meeting at the Legislative Office Building in Concord. (Amend. Compl. at ¶ 75.) The building was crowded, and Staples remained in a hallway outside the committee room, where he was "monitored by

Defendant Trooper Gregory DeLuca." (Amend. Compl. at ¶ 75.) When the meeting finished, Staples "voiced concern" to Trooper DeLuca about the "safety of a woman holding a baby who had not yet exited." (Amend. Compl. at ¶ 75.) Staples also expressed "frustration by exclaiming 'Tyrants!'" (Amend. Compl. at ¶ 75.) Trooper DeLuca then arrested Staples. (Amend. Compl. at ¶ 75.)

No prosecutor appeared at the arraignment following Staples's November 19th arrest, no formal charges were presented, and the "matter was summarily continued without judicial explanation." (Amend. Compl. at ¶ 80.) Staples remained subject to the same bail conditions. (Amend. Compl. at ¶ 80.) Staples's motion to dismiss was granted with prejudice. (Amend. Compl. at ¶ 82.) Attorney O'Leary filed a motion to reconsider, which the court denied. (Amend. Compl. at ¶ 82.)

The plaintiffs now seek declaratory and injunctive relief, the "expungement and sealing" of records relating to them, "structural relief to ensure constitutional compliance," as well as an award of damages and attorney's fees and costs. (Amend. Compl. at p. 46–49.)

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss for failure to state a claim [under Feder. R. Civ. P. 12(b)(6)], the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012) (citation omitted). This inquiry is a two-step process:

> First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief.

*Goldstein v. Galvin*, 719 F.3d 16, 29-30 (1st Cir. 2013) (citations and quotations omitted). "If this factual residue is too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint may be dismissed." *Id*. at 30.

## ARGUMENT

### I.    The claims against Attorney O'Leary are barred by prosecutorial immunity.

The plaintiffs allege that Attorney O'Leary "filed a retaliatory motion to revoke Staples' bail." (Amend. Compl. at ¶ 87.) They take further umbrage with Attorney O'Leary's decision to file a motion to reconsider after not attending the trial. (Amend. Compl. at ¶ 82.) Attorney O'Leary enjoys prosecutorial discretion for his prosecutorial decisions. *See United States v. Welch*, 15 F.3d 1202, 1207 (1st Cir. 1993) ("The decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.") (citation omitted). To receive prosecutorial immunity, an official must have been performing a function "closely associated with the judicial process," as opposed to an administrative function. *Penate v. Kaczmarek*, 928 F.3d 128, 135-37 (1st Cir. 2019). The factual allegations challenge Attorney O'Leary's decision to seek to revoke Staples's bail, to not attend the trial, and to file a motion to reconsider the dismissal of the case. In other words, the plaintiffs disagree with Attorney O'Leary's trial strategy. This is precisely the type of advocacy function of a prosecutor that should be shielded by absolute immunity. Accordingly, the claims against Attorney O'Leary should be dismissed.

### II.    The Eleventh Amendment bars the plaintiffs' official-capacity claims for monetary damages and declaratory relief.

"The Eleventh Amendment generally bars suits against states and state officials in federal court." *Parente v. Lefebvre*, 122 F.4th 457, 461–62 (1st Cir. 2024) (citations and quotations omitted). In keeping with the Eleventh Amendment, the Supreme Court "has consistently held

that an unconsenting State is immune from suits brought in federal courts by her own citizens[.]"[2] *Edelman v. Jordan*, 415 U.S. 651, 662–663 (1974). For actions brought under 42 U.S.C. § 1983, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … [a]s such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). It is therefore well settled that "neither a State nor its officials acting in their official capacities" can be subject to a suit for monetary damages in federal court under § 1983. *Id.* Accordingly, the Eleventh Amendment bars the plaintiffs' federal claims to the extent those claims are asserted against the defendants in their official capacities and seek monetary damages. Those claims must therefore be dismissed.

The Eleventh Amendment likewise bars the plaintiffs' federal constitutional claims against the defendants to the extent the plaintiffs seek declaratory relief. While the *Ex parte Young* doctrine "permits federal courts to issue prospective relief that requires state officials to conform their future conduct to federal law," it does not provide an exception to Eleventh Amendment immunity for "retrospective relief that only makes reparation for the past." *Cotto v. Campbell*, 126 F.4th 761, 771 (1st Cir. 2025) (cleaned up); *see also T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71, 91–92 (2d Cir. 2024) (holding that request for declaratory relief that was "facially retrospective" in that it sought "only a declaration regarding [the government's] previous actions, not its future conduct" was barred by the Eleventh Amendment). Here, the plaintiffs seek declarations that the defendants' past conduct violated federal law. They do not allege any ongoing violation of federal law. Their requests for declaratory relief thus do not fall

---

[2] The defendants here note that, due to applicable Eleventh Amendment immunity, any effort by the plaintiffs to seek injunctive relief against the State in this federal-court litigation would be an exercise in frivolity. *See Cotto v. Campbell*, 126 F.4th 761, 771 (1st Cir. 2025) (Noting that the *Ex parte Young* doctrine permits federal courts to issue prospective relief against state *officials*, as opposed to states themselves.).

within the *Ex parte Young* exception to Eleventh Amendment immunity and must also be dismissed.

Lastly, the Eleventh Amendment also bars the plaintiffs' state-law claims against the defendants in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). This is true regardless of the relief sought. *See id*. Accordingly, any state-law claims asserted against the defendants in their official capacities must likewise be dismissed.

### III.    The plaintiffs' claims for declaratory and injunctive relief are not viable to the extent asserted against the defendants in their individual capacities.

To the extent the plaintiffs are seeking declaratory and injunctive relief against the defendants in their individual capacities, those claims are not viable. "Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022). Likewise, there are no allegations in the plaintiffs' complaint that would support an inference (much less a plausible one) that the defendants took any action in relation to the plaintiffs outside of the scope of their official roles. In the absence of such allegations, a claim asking a state official to "act according to [state] law" is asserted against that official in his "official capacit[y]." *Contoocook Valley Sch. Dist. v. State*, 174 N.H. 154, 168 (2021). The plaintiffs' claims for declaratory and injunctive relief under state or federal law therefore cannot proceed against the defendants in their individual capacities. Those claims must also be dismissed.

### IV.    The plaintiffs' state constitutional claims are not viable to the extent they seek damages.

To the extent the plaintiffs bring damages claims against the defendants for alleged violations of the New Hampshire Constitution, those claims are also not viable. The New Hampshire Supreme Court has consistently declined to recognize state constitutional torts for

damages akin to a federal Bivens action. *See, e.g.*, *Khater v. Sullivan*, 160 N.H. 372, 374–75 (2010); *Marquay v. Eno*, 139 N.H. 708, 721–22 (1995); *Rockhouse Mountain Prop. Owners Ass'n v. Conway*, 127 N.H. 593, 597–602 (1986). Thus, to the extent the plaintiffs seek monetary damages for purported constitutional violations, their claims are not viable under established law and must also be dismissed.

V.    **Any claims arising out of the December 28, 2020, January 31, 2021, and September 29, 2021 events are time-barred.**

In the First Amended Complaint, the plaintiffs discuss a December 28, 2020 candlelight vigil in Newfields, a January 31, 2021 caroling event in Newfields, and a September 29, 2021 Executive Council meeting. To the extent any of their claims arise out of those three events, those claims are time-barred. "Section 1983 does not contain a built-in statute of limitations. Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action." *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). New Hampshire law imposes a three-year statute of limitations for claims against state agencies or officials. RSA 541-B:14, IV; *see also* RSA 508:4 (imposing a three-year limitations period for personal actions). The plaintiffs filed their complaint on October 11, 2024, more than three years after the December 28, 2020, January 31, 2021, and September 29, 2021 events. Any claims that arise out of alleged conduct at those events are therefore time-barred.[3]

---

[3] The Court should also dismiss any claims arising out of the November 8, 2021 public hearing, since that event was not included in the original complaint in this matter and occurred more than three years before the plaintiffs filed their First Amended Complaint.

VI.    **The plaintiffs have failed to state a claim on any of their individual-capacity federal claims.**

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Put differently, "[i]t is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Thus, to state an individual-capacity claim against the defendants under § 1983, the plaintiffs must allege well-pleaded facts that, when taken as true, support a plausible inference that each of the defendants violated the plaintiffs' constitutional rights.

The plaintiffs' allegations with respect to the October 13, 2021 Executive Council meeting are insufficient to state an individual-capacity claim under federal law. The alleged involvement of the defendants is limited to Governor Sununu being "visibly engaged in active text communication with law enforcement officials stationed at the Executive Council meeting" and Attorney General Formella approaching the governor and "confer[ring] in a whisper." (Amend. Compl. at ¶ 63.) The plaintiffs also allege that before the meeting, Governor Sununu allegedly made a public statement that "anyone who 'got out of line' would be 'removed or arrested.'" (Amend. Compl. at ¶ 57.) Such allegations, even when taken as true, are insufficient to sustain any claim for relief under federal law.

The plaintiffs have failed to allege the involvement of, or even the attendance of, any of the defendants at the November 8, 2021 State House event. Although, Attorney O'Leary is referenced regarding the event, it is only concerning his subsequent motion to revoke bail. As discussed above, he is entitled to prosecutorial immunity for that action. Accordingly, the

plaintiffs' allegations surrounding the November 8, 2021 State House event are insufficient to state an individual-capacity claim under § 1983.

Similarly, the plaintiffs have failed to allege the involvement of, or even the attendance of, any of the defendants at the November 19, 2021 Fiscal Committee meeting. Although Attorney O'Leary is referenced regarding the event, it is only concerning his subsequent decision not to attend the trial regarding the November 19th event. As discussed above, he is entitled to prosecutorial immunity for that decision. Accordingly, the plaintiffs' allegations surrounding the November 19, 2021 Fiscal Committee meeting are insufficient to state an individual-capacity claim under § 1983.

The plaintiffs also appear to allege violations of the Fifth and Eighth Amendments that do not apply to them under the facts they allege. "The Fifth Amendment Due Process Clause . . . applies only to actions of the federal government—not to those of state or local governments." *Martinez-Rivera v. Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (cleaned up). Similarly, "the Eighth Amendment's prohibition of cruel and unusual punishment only applies to incarcerated persons serving a criminal sentence." *Silva v. Commonwealth*, No. 20-11866-LTS, 2021 U.S. Dist. LEXIS 44767, at *9 (D. Mass. Mar. 9, 2021) (citing *Martinez-Rivera*, 498 F.3d at 9). The plaintiffs' factual allegations are insufficient to state a claim under either amendment.

The plaintiffs' First Amendment claim also fails. "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004). However, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). In regards to the defendants at issue here, none are alleged to have arrested the plaintiffs. Additionally, the plaintiffs point to Attorney O'Leary filing a motion to revoke bail after Staples, who had bail

conditions to stay away from the governor or any place he may be, entered the New Hampshire

State House carrying a "sheathed knife" and told a trooper, "You can arrest me if you want, but

I'm here to testify," and "Let the Governor know I'm in the building." (Amend. Compl. at ¶ 67,

71.). The plaintiffs' conclusory argument that this action was retaliatory is insufficient to state a

claim. Thus, the plaintiffs' First Amendment claim is also not viable.

The plaintiffs also make a claim for unlawful seizure and excessive force under the

Fourth Amendment (Count II). That claim, however, is not based on any actions of the

defendants filing this motion. Accordingly, the plaintiffs' allegations are insufficient to state a

claim under that amendment.

The plaintiffs also purport to assert due process and abuse of process claims under the

Fourteenth Amendment (Count III). In support of their Fourteenth Amendment claim, the

plaintiffs point to "vague, overbroad, and punitive" bail conditions in their state court criminal

matters. (*See* Amend. Compl. at ¶ 106.) The state court, not the defendants, imposes such bail

conditions, and no state court has been named as a party in this federal-court action. *See* RSA

chapter 597. Thus, the plaintiffs' arguments are misplaced. The plaintiffs also point to Attorney

O'Leary's motion to revoke bail and decision not to appear at trial. As discussed above, that

decision enjoys prosecutorial discretion.

As part of their Fourteenth Amendment claim, the plaintiffs also throw in a reference to

equal protection. The invocation of equal protection is also flawed. "[O]nly classifications

considered 'suspect' are examined with heightened scrutiny" under the Equal Protection Clause.

*Mazzarino v. Mass. State Lottery Comm'n*, 616 F.Supp.3d 118, 128 (D. Mass. 2022) (citation

omitted). While the plaintiffs complain there was "unequal treatment of dissenters as compared

to those who supported government policies," they offer no support for the proposition that such a classification triggers heightened scrutiny.

The plaintiffs' conspiracy claim under 42 U.S.C. § 1985 is also deficient. "Pleading a section 1985(3) conspiracy requires at least minimum factual support of the existence of a conspiracy." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (citation omitted). "Thus, a plaintiff seeking to allege such a conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights." *Id*. "Without direct evidence of such an agreement, . . . the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." *Id*. "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." *Id*. Here, the plaintiffs fail to allege sufficient facts that, when taken as true, support a reasonable inference that the defendants entered into a conspiracy to violate the plaintiffs' civil rights. For example, although the plaintiffs allege that, immediately prior to the October 13th arrests, Governor Sununu was "visibly engaged in active text communication with law enforcement officials" and that Attorney General Formella approached the Governor and conferred "in a whisper," (Amend. Compl. at ¶ 63), there is no allegation as to what the communications contained. Similarly, the allegation that there were public statements "branding dissenters as 'anti-vaxxers,' 'agitators,' and 'public threats,'" (Amend. Compl. at ¶ 121b), does not specify who made the statements or how they could be interpreted as being directed at the plaintiffs. Such vague assertions do not constitute a plausible allegation of any agreement among the alleged conspirators to deprive the plaintiffs of their civil rights. Accordingly, any conspiracy claim also fails.

**VII.   The plaintiffs' individual-capacity federal claims are barred by qualified immunity.**

If the Court concludes that the plaintiffs have minimally alleged one or more federal claims against the defendants, those claims still must be dismissed based on qualified immunity. "Qualified immunity provides defendant public officials an immunity from suit and not a mere defense to liability." *Air Sunshine, Inc. v.  Carl*, 663 F.3d 27, 32 (1st Cir. 2011) "The doctrine of qualified immunity shields [officials] from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah, Ok. v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (citation and quotations omitted). "[Q]ualified immunity protects all but the plainly incompetent and those who knowingly violate the law." *Id.* (same omissions).

The qualified immunity standard imposed "additional requirements" beyond what is necessary to merely state a claim for relief. *Air Sunshine, Inc.*, 663 F.3d at 35. Government officials sued in their individual capacities "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Segrain v. Duffy*, 118 F.4th 45, 57 (1st Cir. 2024) (quotations omitted). When qualified immunity is raised in a motion to dismiss, a court must assume the truth of all well-pleaded facts and determine whether they demonstrate a violation of a "clearly established right." *See Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 41, 45–48 (1st Cir. 2016). When a defendant raises a qualified immunity defense, "[t]he plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed." *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015). To overcome qualified immunity, a plaintiff must plead facts that, when assumed true, support a plausible inference that "every reasonable officer would understand that what they are

16

doing is unlawful." *Segrain*, 118 F.4th at 57 (internal quotations and brackets omitted). "In determining whether such law was clearly established, the court is mindful that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Soltani v. Smith*, 812 F. Supp. 1280, 1301 (D.N.H. 1993) (internal quotation omitted).

Here, the plaintiffs have failed to allege clearly established violations of the Fifth and Eighth Amendment because those provisions do not apply under the circumstances alleged in the First Amended Complaint as a matter of law. Similarly, there is no basis to conclude that any reasonable official would know that what the defendants are alleged to have done here violated due process, equal protection, or the First Amendment. Nor is there any basis to conclude that any reasonable official would know that what the defendants are alleged to have done here would constitute a civil rights conspiracy under 42 U.S.C. § 1985. The plaintiffs have therefore failed to allege facts that, when taken as true, support the plausible inference that the defendants violated clearly established law. Qualified immunity therefore bars the plaintiffs' individual-capacity claims for damages even if the Court otherwise concludes that the plaintiffs had minimally alleged one or more federal claims.

**VIII.    The Court should dismiss any remaining state-law claims for failure to state a claim or otherwise decline supplemental jurisdiction over those claims.**

In addition to the state constitutional claims, which should be dismissed as discussed above, the plaintiffs also bring state tort claims, which the Court should likewise dismiss.

The plaintiffs first allege false arrest and false imprisonment regarding Attorney O'Leary, John Doe State Police Officers, and John Doe Municipal Officers. Although the plaintiffs make a vague allegation that Attorney O'Leary arrested the plaintiffs, (Amend. Compl. at ¶ 133), the actual allegations in the First Amended Complaint focus on Attorney O'Leary filing a motion to

17

revoke bail and his subsequent actions/inactions at trial, which are insufficient to support a claim for false arrest.

The plaintiffs' claim regarding false imprisonment also fails. To prevail on a claim for false imprisonment, a plaintiff must show four elements:

> (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's acts directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority.

*Ojo v. Lorenzo*, 164 N.H. 717, 726 (2013). There is no allegation that Attorney O'Leary confined the plaintiffs within fixed boundaries. Accordingly, the plaintiffs have failed to state a claim of false imprisonment.

The plaintiffs' malicious prosecution claims also fail. Under New Hampshire state law, in order to bring a malicious prosecution claim, the plaintiff must allege facts sufficient to show that: "(1) he was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in his favor." *Id*. at 727.

Here, there is no specific allegation that any criminal prosecution terminated in Bussiere's favor. There is merely a conclusory statement that the "criminal proceedings initiated against Plaintiffs ultimately terminated in their favor, with charged dismissed or otherwise resolved without conviction." (Amend. Compl. at ¶ 137.) Nor are there sufficient facts to establish that she was subjected to a criminal prosecution with malice.

In regards to Staples, although the plaintiffs allege his motion to dismiss his case regarding the events of November 19, 2021 was granted with prejudice, (Amend. Compl. at ¶ 82), his conclusory allegations that the charges against him lacked probable cause and were initiated with malice are insufficient to form a malicious prosecution claim. Rather, Staples notes

multiple times that he asked to be arrested or cited. (*See* Amend. Compl. at ¶¶ 40, 67.)

Accordingly, the Court should dismiss the malicious prosecution claim.

The plaintiffs also claim Attorney O'Leary abused the legal process against them. The

New Hampshire Supreme Court has explained:

> Abuse of process comprises two essential elements: an ulterior purpose and a willful act in the use of the process not proper in the regular conduct of the proceeding. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.

*New Eng. Backflow, Inc. v. Gagne*, 172 N.H. 655, 673 (2019) (citations and quotations omitted).

"There is, in other words, a form of extortion, and it is what is done in the course of negotiation,

rather than the issuance of any formal use of the process itself, which constitutes the tort."

*Clipper Affiliates v. Checovich*, 138 N.H. 271, 277 (1994). "There is no liability where a party

has done nothing more than carry out the process to its authorized conclusion, even though with

ulterior intentions." *New Eng. Backflow, Inc.*, 172 N.H. at 673 (citations omitted). The First

Amended Complaint is devoid of any factual allegations that would allow the plaintiffs to

maintain an abuse of process claim against the defendants under this theory.

The plaintiffs also allege the defendants defamed them.

> Defamation is made up of the twin torts of libel and slander—the one being, in general, written while the other in general is oral. Liability for defamation has two distinct intent elements. First, a defendant can act either intentionally or negligently in communicating defamatory material. Second, when concerning a private person, a defendant can either (a) know[ ] that the statement is false and that it defames the other, (b) act[ ] in reckless disregard of these matters, or (c) act[ ] negligently in failing to ascertain the truth.

*McCarthy v. Manchester Police Dep't*, 168 N.H. 202, 210 (2015) (citations and quotations

omitted).

"[T]he general rule is that statements made in the course of judicial proceedings are absolutely privileged from civil actions, provided they are pertinent to the subject of the proceeding." *McGranahan v. Dahar*, 119 N.H. 758, 763 (1979). Thus, any statements Attorney O'Leary is alleged to have made cannot support a claim for defamation. Regarding the other defendants in this motion, they are not alleged to have made any specific statements directly against the plaintiffs. Rather, they are alleged to have made generalized statements, or as the plaintiffs claim, "broad public statements," (Amend. Compl. at ¶ 50) about "protestors" and "attendees." Such allegations are insufficient to support a defamation claim.

The plaintiffs also allege an invasion of privacy claim in which they claim the defendants portrayed them in a false light. The Court should likewise dismiss this claim because New Hampshire has "declined to recognize a common law false light invasion of privacy action." *Richards v. Union Leader Corp.*, 176 N.H. 789, 803 (2023).

Finally, the plaintiffs allege a claim for intentional infliction of emotional distress ("IIED"). "In order to make out a claim for [IIED], a plaintiff must allege that a defendant 'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'" *Tessier v. Rockefeller*, 162 N.H. 324, 341 (2011) (citation omitted). Viewing the First Amended Complaint in the light most favorable to the plaintiffs, it is clear that it fails to allege facts sufficient to state a viable claim for IIED against the defendants.

"In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." *Mikell v. Sch. Admin. Unit. No. 33*, 158 N.H. 723, 729 (2009) (quotations omitted). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in

20

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citation omitted). The plaintiffs fail to identify sufficient conduct by the defendants that reaches the extreme and outrageous level required for IIED. Because the plaintiffs have failed to allege facts sufficient to establish the requisite elements of a claim for intentional infliction of emotional distress, the Court should dismiss that claim against the defendants.

Based on the foregoing, the Court should dismiss all the state law claims against the defendants. Alternatively, the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims. "[I]t is settled law that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed*." Borras-Borrero v. Corporacion del Fondo del Seguro del Estado*, 958 F.3d 26, 36 (1st Cir. 2020).

### IX.    The plaintiffs are not entitled to punitive damages, an award of fees, or other relief as a matter of law.

For all the above-stated reasons, the plaintiffs' claims are not viable. If, however, the Court allows one or more of those claims to proceed, it should dismiss the request for punitive damages and attorney's fees.

The State of New Hampshire has not waived sovereign immunity for any claim for punitive damages. RSA 541-B:14, I. Accordingly, punitive damages are not available as a matter of law on any viable state-law claim. Punitive damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Even if the Court concludes that the plaintiffs have minimally alleged a viable federal claim, there are no allegations in the First Amended Complaint that

would support an inference that the defendants' conduct rose to the level of culpability that would warrant an award of punitive damages under federal law.

Moreover, a non-lawyer pro se litigant is not entitled to attorney fees. *See Aronson v. United States Dep't of Hous. & Urban Dev.*, 866 F.2d 1, 4 (1st Cir. 1989). The plaintiffs are proceeding pro se in this case. Any request for attorneys' fees must therefore also be dismissed.

Finally, the plaintiffs' do not include a count for injunctive relief, their request for "expungement and sealing" of records relating to them, or "structural relief to ensure constitutional compliance," but they request such relief in their Prayer for Relief. The plaintiffs, however, fail to provide support for such relief in the First Amended Complaint. As a result, any request for such relief should also be dismissed.

## CONCLUSION

Based on the foregoing, the Court should dismiss the First Amended Complaint against the defendants. The claims against Attorney O'Leary are barred by prosecutorial immunity. The Eleventh Amendment bars the plaintiffs' official-capacity claims for monetary damages and declaratory relief. The plaintiffs' claims for declaratory and injunctive relief are not viable to the extent asserted against the defendants in their individual capacities. The plaintiffs' state constitutional claims are not viable to the extent they seek damages. Any claims arising out of the December 28, 2020, January 31, 2021, and September 29, 2021 events are time-barred. The plaintiffs have failed to state a claim on any of their individual-capacity federal claims and those claims are barred by qualified immunity. The Court should dismiss any remaining state-law claims for failure to state a claim or otherwise decline supplemental jurisdiction over those claims. Finally, the plaintiffs are not entitled to punitive damages, an award of fees as a matter of

law, or other relief against the defendants. Accordingly, the Court should dismiss the First

Amended Complaint against the defendants.

WHEREFORE, the defendants respectfully request that this Honorable Court:

A.  Dismiss the First Amended Complaint; and

B.  Grant such other and further relief as justice may require.

Respectfully submitted,

KELLY AYOTTE, GOVERNOR;
CHRISTOPHER SUNUNU, FORMER
GOVERNOR; AND
JOHN FORMELLA, ATTORNEY GENERAL

By their attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Dated: June 30, 2025                 /s/ Shawna Bentley
                                     Shawna Bentley, Bar #270149
                                     Assistant Attorney General
                                     Civil Bureau
                                     NH Department of Justice
                                     1 Granite Place South
                                     Concord, NH 03301
                                     shawna.bentley@doj.nh.gov
                                     (603) 271-3650

                                            and

CHARLES O'LEARY

By his attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Dated: June 30, 2025

/s/ Meaghan A. Jepsen
Meaghan A. Jepsen, Bar # 266707
Attorney
Public Safety and Infrastructure Bureau
NH Department of Justice
1 Granite Place South
Concord, NH 03301
meaghan.a.jepsen@doj.nh.gov
(603) 271-3675

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via First Class Mail on June 30, 2025 to Plaintiffs' addresses as listed in the Complaint.

*/s/ Meaghan A. Jepsen*
Meaghan A. Jepsen