UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

FRANK STAPLES and
KATHLEEN BUSSIERE

      v.    Civil No. 24-cv-331-LM-TSM

GOVERNOR, STATE OF
NEW HAMPSHIRE, et al.

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Self-represented Plaintiffs, Frank Staples and Kathleen Boussiere, brought federal and state claims against the former Governor, Christopher Sununu; the New Hampshire Attorney General, John Formella; and Charles O'Leary. Doc. No. 1. Plaintiffs filed an amended complaint in which they added claims against Governor Ayotte, the State of New Hampshire, the New Hampshire State Police, the Town of Newfields (New Hampshire), the Newfields Police Department, Gregory DeLuca, Megan Walsh, and the estate of Kathleen O'Brien. Doc. No. 48. Plaintiff Staples moved for a preliminary injunction. Doc. No. 66. Defendants Governor Ayotte, former Governor Sununu, Attorney General Formella, and Charles O'Leary moved to dismiss the claims against them.[1] Doc. No. 60. Defendants' motion to dismiss and Staples's motion for a preliminary injunction were referred for a report and recommendation. See 28 U.S.C. 636(b)(1)(B). For the reasons that follow,

---

[1] The moving Defendants, except for Governor Ayotte, were named in the original complaint (Doc. No. 1). Plaintiffs have not served the defendants first named in the amended complaint (Doc. No. 48), and they are not parties in this action. The court addressed Plaintiffs' failure to serve the remaining Defendants in a separate order issued this date.

the district judge should grant Defendants' motion to dismiss (Doc. No. 60) and deny Staples's motion for a preliminary injunction (Doc. No. 66).[2]

## DISCUSSION

### I. Motion to Dismiss

Defendants Governor Ayotte, former Governor Sununu, Attorney General Formella, and Charles O'Leary move to dismiss all of Plaintiffs' claims in the amended complaint. Doc. No. 60. Plaintiffs moved for an extension of time to respond to the motion to dismiss. Doc. No. 65. The court granted an extension of time to October 6, 2025. End. Or. Sept. 17, 2025. Plaintiffs did not file an objection within the time allowed, and then moved, after the deadline, for another extension of time. Doc. No. 79. The court set an extended deadline of December 5, 2025 for Plaintiffs to object to the pending motion to dismiss. End. Or. Nov. 25, 2025. Plaintiffs did not file an objection within the time allowed and still have not filed an objection.[3]

A. Standard of Review

Under the Local Rules in this district, objections to motions to dismiss are due fourteen days from the date the motion is filed, and "[t]he court shall deem waived any objection not filed in accordance with [Rule 7.1.]" LR 7.1(b). Although the court extended that deadline twice, Plaintiffs did not file an objection. A failure to object may be grounds to dismiss the claims as long as that result does not "clearly offend equity." Gregory v. IQVIA Holdings Inc., No. 25-cv-163, 2025 U.S. Dist. LEXIS 123390, at *16, 2025 WL 1796031, at *5-*6 (D. Me. June 30, 2025). See also Sovann v. Blinken, No. 24-cv-11826, 2025 U.S. Dist. LEXIS 172793, at *2-*3, 2025 WL

---

[2] Although both Frank Staples and Kathleen Bussiere are self-represented plaintiffs in this action, only Staples signed the motion for a preliminary injunction. Doc. No. 66.

[3] In total, Plaintiffs had more than 7 months to file an objection to the motion to dismiss.

2549422, at *1 (D. Mass. Sept. 4, 2025). In light of Plaintiffs' self-represented status, the court reviews the claims under the Federal Rule of Civil Procedure 12(b)(6) standard and the arguments made in Defendants' motion to dismiss while noting, as appropriate, the effect of Plaintiffs' failure to object to the motion.

When considering a motion to dismiss under Rule 12(b)(6), the court takes the plaintiff's factual allegations as true and resolves reasonable inferences in his favor. Conti v. Citizens Bank, N.A., 157 F.4th 10, 15 (1st Cir. 2025). Importantly, however, the court considers only well-pled facts. 3137, LLC v. Town of Harwich, 126 F.4th 1, 8 (1st Cir. 2025). The court disregards "'conclusory legal allegations' and factual assertions that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" Cangrejeros De Santurce Baseball Club, LLC v. Liga De Beisbol De Puerto Rico, 146 F.4th 1, 11 (1st Cir. 2025) (quoting Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 36 (1st Cir. 2022)). Further, the court ignores statements "'that simply offer legal labels and conclusions or merely rehash cause-of-action elements.'" 3137, LLC, 126 F.4th at 8 (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)). "To survive a Rule 12(b)(6) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,' . . . [and a] claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cangrejeros, 146 F. 4th at 11 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Self-represented litigants are entitled to a liberal reading of their pleadings. Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

B.  Background

In their 50-page amended complaint, Plaintiffs allege federal constitutional violations and state tort liability arising from actions taken against them at various events that they attended between December 2020 and November 2021.[4] Doc. No. 48. For purposes of the motion to dismiss, the court considers the claims only as to the moving Defendants, Governor Ayotte, former Governor Sununu, Attorney General Formella, and Charles O'Leary.

*Candlelight Vigil in Newfields*

The first event alleged in the amended complaint was a candlelight vigil in Newfields, New Hampshire, where former Governor Sununu resides. Id. at ¶ 20. The vigil was held on December 28, 2020 "to memorialize lives lost or affected by COVID-19 lockdown measures, including deaths from suicide, overdose, economic hardship, and isolation." Id. at ¶ 25. Plaintiffs allege that when Staples and others arrived at the vigil site, officers from the Newfields Police Department, a New Hampshire State Trooper, and other officers met them. Id. at ¶ 28. Plaintiffs allege that Staples attempted to comply with officers' orders but was arrested and then detained on "restrictive bail conditions." Id. Plaintiffs allege that all citations were resolved in their favor.[5] Id. at ¶ 34A.

---

[4] Plaintiffs state that they incorporate "by reference relevant facts and legal issues raised in: a. Todd v. Sununu, Case No. 1:24-cv-00330 (D.N.H.), and b. Domenico v. Town of Newfields, Docket No. 226-2022-CV-00442 (N.H. Hillsborough Cty. Sup. Ct., Southern District)." Doc. No. 48 at ¶ 5. While Federal Rule of Civil Procedure 10(c) allows incorporation by reference within the same action, parties are not permitted to incorporate by reference allegations in pleadings in a separate action. Pellegrino v. Joun, No. 25-cv-11681, 2025 U.S. Dist. LEXIS 228087, at *18-*19, 2025 WL 3209294, at *7 (D. Mass. July 23, 2025) (citing Thao v. LH Housing, LLC, No. 2:21-cv-00240, 2022 U.S. Dist. LEXIS 142135, at *7, 2022 WL 3227130, at *3 (D. Me. Aug. 10, 2022) and 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice & Procedure § 1326 (4th ed. 2022)). Further, Plaintiffs do not cite or explain what allegations or "facts or legal issues" they intended to incorporate into their amended complaint and did not provide copies of pertinent parts of the cited cases. For these reasons, the cited cases are not incorporated by reference into this case.

[5] The court notes that Plaintiffs allege jointly that they did certain things or that things were done to them when many of the alleged events appear to include only Plaintiff Staples. Further, Plaintiffs

4

### *Caroling Near Governor Sununu's Residence*

Plaintiffs allege that on January 31, 2021, Staples "participated in a peaceful Christmas caroling event near Governor Sununu's residence in Newfields, New Hampshire, intended as a symbolic act of civil disobedience to challenge the constitutionality of a recently enacted anti-picketing ordinance." Id. at ¶ 35. Officers from the Newfields Police Department and the New Hampshire State Police were at the site before Staples and others arrived. Id. at ¶ 37. Staples and another participant asked Newfields police officers about an alleged violation of the anti-picketing ordinance, and one officer said that citations would be issued to all who remained at the site. Id. at ¶ 39. When the group was finished caroling, Staples asked an officer to issue citations to all who were present, but only Staples was cited. Id. at ¶ 40. Dissatisfied with that result, Staples asked the officer to identify himself, and the officer warned Staples to stop. Id. at ¶ 41. Staples nevertheless continued to question the officers, and he was arrested. Id. When he was released, he was "subjected to restrictive and vague bail conditions, including a blanket prohibition on being within 1,000 feet of Governor Sununu or any location he 'may be'" Id. at ¶ 43.

### *Executive Council Meeting – September 29, 2021*

Plaintiffs allege that Staples planned to attend an Executive Council meeting at Saint Anselm College on September 29, 2021. Id. ¶ 46. Because of fire code restrictions, Staples and others were not allowed to enter the building. Id. at ¶ 47. Plaintiffs allege that the restrictions were selectively enforced to exclude known political dissenters, such as Staples. Id. During a break in the meeting, Staples protested provisions in a federal contract under review by the Executive

---

appear to allege claims on behalf of other people who are not parties in this case. Unrepresented plaintiffs cannot bring claims on behalf of third parties. LR 83.6(b); LR 83.2(d); Albrecht v. Judge, N.H. Circuit Court, 25-cv-93-SM, 2025 WL 2300513, at *1-*2 (D.N.H. Aug. 8, 2025). For these reasons, the court focuses on which, if any, named Plaintiff participated in the alleged events and what occurred that affected a named Plaintiff.

Council "by exclaiming, 'You want to lock me in a FEMA camp? Then do it now! Lock me in a FEMA camp!'" Id. at ¶ 48. Then, "some members of the crowd began chanting 'Shut it down!' in protest of what they perceived as an undemocratic and coercive funding measure." Id. at ¶ 49.

Plaintiffs allege that Staples was not arrested, cited, or warned because of his conduct at that meeting. Id. at ¶ 50. However, they object to public statements made by Governor Sununu and Attorney General Formella that the attendees were "'threatening' and 'dangerous.'" Id. Plaintiffs allege that media outlets aired edited footage of the event that misrepresented Staples's conduct and that Governor Sununu and Attorney General Formella "amplified" the media presentations. Id. at ¶ 51. Plaintiffs allege that prosecutors later used the video of Staples at the Executive Council meeting at Staples's trial to show "a pattern of misconduct." Id. at ¶ 52.

### *Executive Council Meeting – October 13, 2021*

Both Staples and Bussiere attended an Executive Council meeting on October 13, 2021, that was a continuation of the September 29 meeting. Id. at ¶ 55. Plaintiffs contend that the location of the meeting, at the New Hampshire Police Standards and Training Facility in Concord, New Hampshire, was significant because the meeting was guarded by officers and tactical units. Id. at ¶ 56. Plaintiffs allege that before the meeting, Governor Sununu stated that anyone at the meeting "who 'got out of line' would be 'removed or arrested.'" Id. at ¶ 57.

Plaintiffs allege that they sat quietly during the meeting. Id. at ¶¶ 58 & 60. They also allege that the majority of those attending the meeting "engaged only in silent symbolic protest – turning their backs to the Council." Id. at ¶ 61B. They allege that only nine of the attendees, including them, were arrested. Id. They contend that those arrested either were associated with dissenting groups or had attended prior demonstrations. Id. Plaintiffs allege that an officer tapped Staples on the shoulder and told him to come with him and that he was taken behind a curtain and arrested. Id. at ¶ 59. Plaintiffs allege that two New Hampshire State Troopers grabbed Bussiere by her arms

and pulled her from her chair, causing her to strike her head. Id. at ¶ 60. They allege that New Hampshire State Police arrested and transported Bussiere with her hands zip-tied behind her back. Id. She was jostled during the transport and hit her head. Id.

Plaintiffs allege that before the arrests, "Governor Christopher Sununu was visibly engaged in active text communication with law enforcement officials stationed at the Executive Council meeting." Id. at ¶ 63. They also allege that "[w]itnesses observed Attorney General John Formella approach the Governor and confer in a whisper, after which further text exchanges occurred." Id. They further allege that Governor Sununu was sending text messages to law enforcement before they were arrested. Id. at ¶¶ 65B & 66B.

### *State House Testimony – November 8, 2021*

Plaintiffs allege that Staples entered the State House on November 8, 2021, to testify during a public hearing on COVID-19 vaccine legislation. Id. at ¶ 67. After he passed through security, a trooper asked him about his presence at the hearing. Id. He responded that he was there to testify, said that the trooper could arrest him, and said: "'Let the Governor know I'm in the building.'" Id. Plaintiffs allege that Staples then testified as he intended to do. Id. at ¶ 69.

Plaintiffs allege that days later, Charles O'Leary, who was a prosecutor in the New Hampshire Department of Justice, moved to revoke Staples's bail because of his presence at the State House and his statement to let the Governor know he was there.[6] Id. at ¶ 67A. Plaintiffs allege that O'Leary stated in the motion to revoke bail that Staples's comment to let the governor know he was in the building was a security threat and also stated that Staples was carrying a knife.

---

[6] To clarify, Plaintiffs allege earlier in the amended complaint that after Staples's arrest while caroling near Governor Sununu's residence he was "subjected to restrictive and vague bail conditions, including a blanket prohibition on being within 1,000 feet of Governor Sununu or any location he 'may be.'" Doc. No. 48 at ¶ 43.

Id. & ¶¶ 70A & 71. Plaintiffs allege that at the bail revocation hearing, the judge found that the conduct did not support detention or modification of bail. Id. at ¶ 72. As a result, Staples remained subject to the original bail conditions. Id.

### *Fiscal Committee Meeting – November 19, 2021*

Plaintiffs allege that Staples attended a public Fiscal Committee meeting on November 19, 2021, on COVID-19 funding. Id. at ¶ 75. Because the meeting was crowded, Staples waited in a hallway where he was "monitored" by Trooper Gregory DeLuca. Id. Plaintiffs allege that when Staples exclaimed "Tyrants!," Trooper DeLuca arrested him. Id. Plaintiffs allege that Staples was handcuffed and transported to a "holding facility." Id. Plaintiffs allege that his arraignment was continued "without judicial explanation." Id. at ¶ 80.

Plaintiffs allege that Staples was charged with disorderly conduct because of his remark, "bootlickers." Id. at ¶ 81. Then, Plaintiffs allege, the state changed the charge to be based on his statement, "fuck around and find out." Id. Plaintiffs allege that Prosecutor O'Leary did not appear for trial, and Staples's motion to dismiss was granted. Id. at ¶ 82. They further allege that the government's motion for reconsideration was denied. Id.

    C. Claims

Based on the allegations in the amended complaint, Plaintiffs bring claims under § 1983 for retaliation for protected speech in violation of the First Amendment (Count I), unlawful seizure and excessive force in violation of the Fourth Amendment (Count II), and deprivation of due process and abuse of process in violation of the Fourteenth Amendment (Count III).[7] Doc. No. 48

---

[7] To the extent Plaintiffs mention the Fifth and Eighth Amendments in the fact section of the complaint, the court does not interpret their § 1983 claims to include violations of those amendments, which are not alleged in the § 1983 counts. Further, the Fifth Amendment applies to actions by the federal government, see Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007), and the Eighth Amendment applies to incarcerated persons. See Norton v. Rodrigues, 955 F.3d 176, 185 (1st Cir. 2020) (quoting U.S. Const. amend. VIII) ("The Eighth Amendment protects

at ¶¶ 85–114E. In Count IV, Plaintiffs allege that John Doe defendants and Prosecutor O'Leary conspired to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3). Id. at ¶¶ 115–124. In Count V, Plaintiffs allege violations of the New Hampshire Constitution. Id. at pgs. 36-41. In Count VI, Plaintiffs allege state tort claims of false arrest and imprisonment, malicious prosecution, abuse of process, defamation, invasion of property, and intentional infliction of emotional distress. Id. at ¶¶ 131–149. Plaintiffs seek declaratory and injunctive relief, expungement of Plaintiffs' arrest records and other records, "structural relief to ensure constitutional compliance," compensatory, punitive, and nominal damages, and an award of attorneys' fees. Id. at pgs. 47-48.

D. Discussion

The moving Defendants, Governors Ayotte and Sununu, Attorney General Formella, and Prosecutor O'Leary, seek dismissal of Plaintiffs' claims on a variety of grounds, including sovereign immunity, prosecutorial immunity, failure to state a claim for declaratory and injunctive relief against Defendants in their individual capacities, failure to state a claim under the New Hampshire Constitution, statute of limitations, failure to state individual capacity claims, qualified immunity, and failure to state a state tort claim. See generally Doc. No. 60-1. Defendants also ask the court to decline supplemental jurisdiction over the state law claims in the event the federal claims are dismissed. Id. at pg. 21. Further, Defendants contend that Plaintiffs are not entitled to punitive damages or attorneys' fees. Id. The court need not address all of the grounds that Defendants raise in order to recommend that the district judge grant Defendants' motion to dismiss.

---

the incarcerated community from 'cruel and unusual punishment.'"). Plaintiffs do not allege action by the federal government, and neither Plaintiff was incarcerated when the events at issue in this case occurred.

9

### i. *Sovereign Immunity – Eleventh Amendment*

The Eleventh Amendment affirms the states' immunity from suit under the doctrine of sovereign immunity. Virginia Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 253 (2011); see also Whole Woman's Health v. Jackson, 595 U.S. 30, 39 (2021) ("Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity."); Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 36 n.34 (1st Cir. 2026) (explaining interchangeable use of the terms "sovereign immunity" and "Eleventh Amendment immunity"). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Stewart, 563 U.S. at 253. "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." Id. at 254; see also Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Suit against a state official in his or her official capacity is a suit against the state. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Clemente Props., Inc., 2026 WL 125574, at *22 ("State governments and state officials sued in their official capacity may invoke sovereign immunity against lawsuits seeking money damages."). The Ex parte Young doctrine provides a limited exception for officials sued in their official capacities, because "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." Stewart, 563 U.S. at 255.

Congress has not abrogated sovereign immunity for the federal claims in this case. Nieves–Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003) (no abrogation of sovereign immunity for § 1983 actions); Kokinda v. Pennsylvania Department of Corrections, 779 F.App'x. 944, 948 (3d Cir. 2019) (no abrogation of sovereign immunity for claims under § 1985(3)). Although a state may waive its sovereign immunity, waiver must be "'unequivocally expressed.'" College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 675–676 (1999) (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984)). Plaintiffs have not

shown or even argued that the State of New Hampshire waived its sovereign immunity from suit in federal court with respect to the state law claims asserted here.

As noted above, the Ex parte Young exception to sovereign immunity allows the court to enjoin state officials acting in their official capacities "'to conform future conduct to the requirements of federal law.'" Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (quoting Lane v. First Nat'l Bank, 871 F.2d 166, 172 n.5 (1st Cir. 1989). In the amended complaint, Plaintiffs seek injunctive relief as follows:

> D. Issue permanent injunctive relief prohibiting Defendants, their successors, and all those acting in concert from;
>
> 1. Retaliating against Plaintiffs or similarly situated individuals for engaging in protected political speech;
>
> 2. Imposing exclusionary bail or probation conditions targeting political association, digital expression, or physical presence near government institutions;
>
> 3. Using government resources to monitor, infiltrate, or disrupt lawful civic activity;
>
> 4. 4. Misusing judicial process—including court filings, scheduling, and discretionary charges—as a tool of retaliation or suppression.

Doc. No. 48 at pg. 47. Plaintiffs sue Governor Kelly Ayotte in her official capacity only. Id. at ¶ 13. They sue Governor Sununu, Attorney General Formella, and Charles O'Leary only in their individual capacities. Id. at ¶¶ 14, 15, & 16.

Plaintiffs do not allege that Governor Ayotte took any action at all, much less action that violated their constitutional rights or would result in state tort liability. Plaintiffs' only allegation about Governor Ayotte is that she is the current governor of New Hampshire.[8] See Doc. No. 48

---

[8] The court notes that Governor Ayotte was elected on November 5, 2024, and took office in January 2025, years after the events that are the basis of Plaintiffs' complaint. Kelly Ayotte, Wikipedia, https://en.wikipedia.org/wiki/Kelly_Ayotte; Governor Kelly Ayotte's Inaugural

11

at ¶ 13. As such, Plaintiffs do not allege any viable claim against Governor Ayotte. Further, any claim against Governor Ayotte in her official capacity with the State of New Hampshire as the real party at interest would be barred by sovereign immunity, and Plaintiffs do not allege a claim against Governor Ayotte that would be excepted under the Ex parte Young doctrine. Accordingly, the district judge should dismiss all claims against Governor Ayotte.

### ii. *Prosecutorial Immunity*

Defendant Charles O'Leary contends that all claims against him are barred by prosecutorial immunity. For purposes of federal claims, "prosecutors are absolutely immune in exercising the core prosecutorial function of 'initiating a prosecution and . . . presenting the State's case.'" Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)); see also Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009). The New Hampshire Supreme Court also recognizes prosecutorial immunity when prosecutors are "performing advocacy functions; that is, functions which are intimately related to initiating and pursuing judicial proceedings against a person." Everitt v. General Electric Co., 156 N.H. 202, 215 (2007) (citing Belcher v. Paine, 136 N.H. 137, 146 (1992)).

Plaintiffs' allegations against Defendant Charles O'Leary pertain to his actions taken as a prosecutor in the New Hampshire Department of Justice.[9] See Doc. No. 48 at ¶¶ 44, 74A, 67A,

---

Address, Office of the Governor Kelly Ayotte (Jan. 9, 2025), https://www.governor.nh.gov/news/governor-kelly-ayottes-inaugural-address.

[9] In support of their state law false arrest and imprisonment claim, Plaintiffs allege that O'Leary, along with state police and town police officers, arrested them. Doc. No. 48 at ¶ 133. Plaintiffs cite the January 31, 2021 caroling event, the October 13, 2021 Executive Council meeting, and the November 19, 2021 Fiscal Committee meeting. Id. They do not include factual allegations about any such arrest. In identifying O'Leary, they allege his actions taken as a prosecutor but do not allege a false arrest. Id. at ¶ 16. Plaintiffs' allegations pertaining to the cited events do not include allegations the O'Leary was involved in their arrests but instead focus on O'Leary's efforts to revoke Staples's bail, his decision to prosecute Staples for his actions at the November 19, 2021,

12

70A, 71, 81, 82, & 85. Specifically, Plaintiffs challenge O'Leary's decision to move to revoke Staples's bail and fault him for failing to appear for trial of the charges arising from the November 19, 2021 event. Id. at ¶ 82. They also fault O'Leary for moving, on the state's behalf, for reconsideration of the order dismissing charges against Staples. Id. Because those actions were core prosecutorial functions, Charles O'Leary is entitled to absolute prosecutorial immunity as to all claims against him in this case. Therefore, the district judge should dismiss all claims against Charles O'Leary due to prosecutorial immunity.

### iii. Statute of Limitations

Defendants contend that Plaintiffs cannot bring claims based on the events that occurred on December 28, 2020, January 31, 2021, and September 29, 2021, because those claims are barred by the statute of limitations. See Doc. No. 60-1 at pg. 11. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266–67 (1985). Under that rule, § 1983 and § 1985 use the forum state's statute of limitations for personal injury claims. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004). In New Hampshire, the three-year limitation period under RSA 508:4

---

meeting, and his actions pertaining to dismissal of the charges against Staples arising from the November 19 meeting. Id. at ¶¶ 44, 70, 72A, 74A, 82, 82A, 87, 108, 110, 112 and at pg. 37. Further, Plaintiffs do not allege facts to show that O'Leary was even present at the cited events. In the absence of any factual allegations to suggest that O'Leary arrested Plaintiffs, the court does not credit the conclusory statement in paragraph 133 to mean that O'Leary actually participated in arresting Plaintiffs. See Cangrejeros, 146 F.4th at 11 (stating that the court does not credit conclusory statements "that simply offer legal labels and conclusions or merely rehash cause-of-action element" or allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture"). Further, Defendants pointed out Plaintiffs' conclusory and improbable allegation of arrest by O'Leary in the motion to dismiss, and Plaintiffs waived any explanation by their failure to file an objection. LR 7.1(b).

governs the federal claims and the tort claims under New Hampshire law. McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011).

Plaintiffs filed the original complaint on October 11, 2024. Under RSA 508:4, all actions must be brought "within 3 years of the act or omission complained of." RSA 508:4. "Although a cause of action arises as soon as all of the necessary elements are present, . . . it does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both the fact of an injury and the cause thereof." Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010) (internal quotation marks omitted). "Once the defendant has established that the statute of limitations would bar the action, the plaintiff has the burden of raising and proving that the discovery rule is applicable to an action otherwise barred by the statute of limitations." Id. at 713.

Defendants have shown that the 3-year limitation period bars claims based on the events that occurred before October 11, 2021. Plaintiffs waived application of the discovery rule by not raising it. In addition, given the immediacy of the timing of the alleged arrests and charges, the discovery rule does not appear to apply in this case. Therefore, claims based on the three events that occurred before October 11, 2021, are time barred, and the district judge should dismiss claims to the extent they are based on those events.

    iv. *Merits*

Former Governor Sununu and Attorney General Formella are the remaining defendants.[10] Plaintiffs' federal and state claims are limited to events at the Executive Council Meeting on October 13, 2021; Staples's alleged attempt to testify at the New Hampshire State House on November 8, 2021; and events at the Fiscal Committee Meeting on November 19, 2021. Plaintiffs

---

[10] As is noted above, although Plaintiffs named other Defendants in the amended complaint (Doc. No. 48), those Defendants were never served, and for that reason, they are not parties in the lawsuit.

14

allege federal claims under § 1983 (Counts I-III) and § 1985(3) (Count IV) and state law claims (Counts V and VI). Plaintiffs provide no allegations of actions by Governor Sununu or Attorney General Formella pertaining to the events on November 8 and 19, 2021. For that reason, Plaintiffs' claims are based on only the October 13, 2021 Executive Council Meeting.

### Section 1983 Claims

Plaintiffs allege § 1983 claims against Governor Sununu and Attorney General Formella for retaliation for protected speech in violation of the First Amendment (Count I), unlawful seizure and excessive force in violation of the Fourth Amendment (Count II), and deprivation of due process and abuse of process in violation of the Fourteenth Amendment (Count III). As stated above, these claims are limited to the October 13, 2021 Meeting. The challenged actions with respect to the October 13 Meeting were Plaintiffs' arrests and the use of force in arresting Bussiere while Plaintiffs were allegedly protesting peacefully and calmly by turning their backs during the meeting. Neither Governor Sununu nor Attorney General Formella arrested either Plaintiff or participated in the arrests. Instead, Plaintiffs allege that unidentified officers and Trooper Gregory DeLuca arrested Staples and Bussiere. Doc. No. 48 at ¶¶ 59 & 87.

There is no respondeat superior or vicarious liability under § 1983. City of Canton v. Harris, 489 U.S. 378, 387 (1989). For purposes of a § 1983 claim, a "supervisor is liable for the subordinate's actions if the subordinate's behavior led to a constitutional violation and if the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (internal quotation marks omitted). That is, "a supervisor's liability must be premised on his or her own acts or omissions." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021) (internal quotation marks omitted). Further, to qualify as a supervisor, a defendant "must have had 'some degree of control'"

over the person who violated the plaintiff's constitutional right. Wadsworth v. Nguyen, 129 F.4th 38, 63 (1st Cir. 2025) (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)).

Plaintiffs attempt to link Governor Sununu and Attorney General Formella to their arrests by police officers at the October 13 Meeting through allegations that Defendants communicated with each other and with law enforcement before the arrests occurred.[11] Doc. No. 48 at ¶¶ 63, 65B, & 66B. First, Plaintiffs do not allege facts to show that either Defendant was the supervisor of the police officers they allege arrested them. See Wadsworth, 129 F.4th at 63. Second, Plaintiffs' allegations about Defendants texting do not include facts to support an inference about the subject matter or the recipients of the texts.[12] See Cangrejeros, 146 F.4th at 11 (holding that the court disregards "'conclusory legal allegations' and factual assertions that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture'") (quoting Legal Sea Foods, 36 F. 4th at 33). As a result, the alleged communication between Defendants before the arrests does not allow an inference that either Defendant ordered, condoned, or encouraged police officers to arrest Plaintiffs or that their arrests were the result of Defendants gross negligence. Plaintiffs do not allege facts to support their § 1983 claims against Governor Sununu

---

[11] Plaintiffs allege in conclusory fashion that they are suing Formella "for authorizing, ratifying, or failing to prevent constitutional and legal violations committed by subordinates within his supervisory authority," but they allege no facts to show that occurred. Doc. No. 48 at ¶ 15. A mere recitation of the elements of supervisory liability does not state a claim. See 3137, LLC, 126 F.4th at 8.

[12] Plaintiffs' allegations that unnamed witnesses and unidentified videos "confirm" that Governor Sununu was sending texts to law enforcement are insufficient to establish that fact. Even if the alleged recipients of the texts were credited, however, Plaintiffs lack any facts to show the subject matter of the texts.

and Attorney General Formella.[13] For these reasons, the district judge should dismiss Counts I, II, and III.

Section 1985(3)

In Count IV, Plaintiffs allege that John Doe Defendants and Prosecutor O'Leary conspired to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3). They do not allege that Governor Sununu or Attorney General Formella violated § 1985(3).[14] As a result, the district judge should dismiss Count IV.

State Law Claims

In Count V, Plaintiffs allege violations of the New Hampshire Constitution. Doc. No. 48 at pgs. 36-41. In Count VI, Plaintiffs allege state tort claims of false arrest and imprisonment, malicious prosecution, abuse of process, defamation, invasion of property, and intentional

---

[13] To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege facts to show "that he engaged in First Amendment-protected conduct, that he suffered an adverse action, and that his protected conduct played a substantial or motivating part in the adverse action." Berge v. School Comm. of Gloucester, 107 F.4th 33, 37, n.4 (1st Cir. 2024) (internal quotation marks omitted). As noted above, Plaintiffs lack allegations that Defendants arrested them (adverse action) and lack allegations that their protest (assuming it was protected conduct) was the motivation for their arrests to support their retaliation in Count I. Plaintiffs' Fourth Amendment claims for unlawful seizure and use of excessive force in Count II also fail because they lack factual allegations that either Defendant arrested them and they allege that claim against police officers not Governor Sununu or Attorney General Formella. In Count III, Plaintiffs allege that Charles O'Leary, police officers, and prosecutors violated their right to due process by arresting them, prosecuting them, and imposing bail conditions on Staples. As such, they do not allege a clam against Defendants in Count III.

[14] To state a claim under § 1985(3), a plaintiff must allege facts to show: "(1) a conspiracy, (2) a conspiratorial purpose to deprive a class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech., 158 F.4th 1, 24 (1st Cir. 2025). In addition, the alleged conspiratorial conduct must be the result of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. (Internal quotation marks omitted).

infliction of emotional distress. Id. at ¶¶ 131-149. In light of the dismissal of Plaintiffs' federal claims, the district judge should decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Kolackovsky v. Town of Rockport, 165 F.4th 114, 123 (1st Cir. 2026) (quotation marks omitted) ("[W]hen federal claims are dismissed before trial, state claims are normally dismissed as well.").

## II.     Motion for Preliminary Injunction

Plaintiff Staples originally moved for a temporary restraining order and a preliminary injunction.[15] Doc. No. 66. The court denied the motion for a temporary restraining order without prejudice and set a briefing schedule for the motion for a preliminary injunction. End. Rep. & Rec. July 29, 2025 (approved Doc. No. 77); Doc. No. 69. Defendants Governors Ayotte and Sununu, Attorney General Formella, and Charles O'Leary filed their objection. Doc. No. 75. Although he was given time to do so, Staples did not file a reply. See Doc. No. 69.

To obtain a preliminary injunction, the moving party must show that four factors weigh in favor of the requested relief: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." Cushing v. Packard, 30 F.4th 27, 35 (1st Cir. 2022). The most important factor is the movant's likelihood of success on the merits, which is indispensable to achieving a preliminary injunction. Akebia Therapeutics, Inc. v. Azar, 976 F.3d

---

[15] In his motion, Staples sought to enjoin Defendants from "[s]urveillance, monitoring, or 'shadowing' of Plaintiff that is not part of a lawful investigation of actual suspected criminal activity," "[i]nterfering with or obstructing Plaintiff's access to public forums, government meetings, or communication with public officials in the absence of a valid time, place, and manner restrictionthat is narrowly tailored and equally applied to all," and "[d]etaining, arresting, searching, or seizing Plaintiff's person or property without a warrant or probable cause of a crime." Doc. No. 66 at pgs. 12-13.

18

86, 92 (1st Cir. 2020); see also New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters for idle curiosity."). For the reasons stated above in the context of Defendants' motion to dismiss, Staples has not shown a likelihood of success on the merits of his claims. For that reason, the district judge should deny Staples's motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the district judge should grant Defendants' motion to dismiss (Doc. No. 60), and the district judge should deny Plaintiff Staples's motion for a preliminary injunction (Doc. No. 66).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. The objection period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Id. (quoting Keating v. Sec'y of Health & Human Servs., 848 F2d 271, 275 (1st Cir. 1988)).

Talesha L. Saint-Marc
United States Magistrate Judge

Dated: February 12, 2026
cc:   Frank Staples, pro se
      Kathleen Boussier, pro se
      Counsel of record